Argued and submitted July 1, 1999, reversed and remanded August 9, 2000

## Scott James HUNT
## and Karen Elaine Hunt,
### *Respondents,*

*v.*

## Theodore Lyle WEISS,
### *Appellant*.

## (98-A-0006; CA A103014)

8 P3d 990

Jeanean West Craig filed the brief for appellant.

Frank C. Rote, III argued the cause for respondents. With him on the brief was Brown, Hughes, Bird & Rote.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

In this step-parent adoption case, father appeals the trial court's judgment terminating his parental rights to his nine-year-old daughter. He assigns error to the trial court's failure to appoint counsel for him and to its determination that the adoption would be in the child's best interest. Because we conclude that the trial court improperly denied father's request for court-appointed counsel, we reverse.

Mother and father were married in 1984 and divorced in 1994. Mother married stepfather in January 1998, and, in March of that year, they petitioned to have the child adopted by stepfather. Father had been incarcerated beginning in 1995 for various crimes involving mother and several members of mother's family. Because of the incarceration and a prior restraining order that had been issued against him, father had not had any in-person contact with child since 1994.[1] He was scheduled to be released in January 1999.

The trial court issued a citation to father directing him to appear and show cause why the adoption should not go forward or to file a response or answer before the hearing date. Father attempted to file a response objecting to the adoption about three weeks before the scheduled hearing. However, he mistakenly sent it to the federal district court, which faxed it to the state circuit court a few days before the hearing. Because father had attempted to file an answer, the trial court continued the hearing for about a month. In doing so, it noted that father desperately needed counsel but that it could not provide it for him. Although the court indicated that it would send father a letter advising him to obtain counsel if possible, the trial court record does not contain such a letter. Shortly after the initial hearing, which he did not attend, father filed a motion and affidavit requesting a waiver of court costs and fees because of indigency. Five days before the second scheduled hearing, father requested a continuance until after his release so that he could "seek legal counsel and financial status." The court apparently did not

---

[1] He appears to have had some very limited communication with the child through the child's paternal grandmother.

address the motion until the hearing began. Father appeared telephonically at the hearing and represented himself. At the start of the hearing, the trial court denied the request for a continuance. Before beginning to testify, father stated that he "would like to ask the Court for counsel" and repeated his request for a continuance until after his release. The trial court proceeded to the merits and determined that adoption would be in the child's best interest. Accordingly, it terminated father's parental rights without his consent under ORS 109.322.[2]

Father assigns error to the trial court's failure to appoint counsel for him. He argues that he was entitled to appointed counsel under Article I, section 20, of the Oregon Constitution, as interpreted in *Zockert v. Fanning*, 310 Or 514, 800 P2d 773 (1990). Mother and stepfather respond that *Zockert* does not entitle father to appointed counsel, that, if it does, father did not properly preserve that issue, and that the court's failure to appoint counsel was harmless error. Father also assigns error to the trial court's conclusion that the adoption would be in child's best interests. Because we agree with father that he was entitled to appointed counsel and that the court's failure to appoint him counsel requires reversal, we do not reach father's second assignment of error.

■ We first address whether father properly preserved his claim to appointed counsel. Father specifically requested counsel, which is all that the father did in *Zockert* to raise that issue. *See Zockert*, 310 Or at 516-17. Although the

___

[2] ORS 109.322 provides that

"[i]f either parent has been adjudged mentally ill or mentally deficient and remains so at the time of the adoption proceedings, or is imprisoned in a state or federal prison under a sentence for a term of not less than three years and has actually served three years, there shall be served upon such parent, if the parent has not consented in writing to the adoption, a citation in accordance with ORS 109.330 to show cause why the adoption of the child should not be decreed. In the case of a person adjudged mentally ill or mentally deficient, the citation shall also be served upon the guardian of the person or, if the parent has no guardian of the person, the court shall appoint a guardian ad litem to appear for the person in the adoption proceedings. Upon hearing being had, if the court finds that the welfare of the child will be best promoted through the adoption of the child, the consent of the mentally ill, mentally deficient or imprisoned parent is not required, and the court shall have authority to proceed regardless of the objection of such parent. This section does not apply where consent is given in loco parentis under ORS 109.316 or 109.318."

Supreme Court did not address preservation in *Zockert*, the fact that it decided the father's claim on the merits indicates that it understood his assignment of error to have been preserved. We see no reason why the preservation issue should be decided differently in this case than it was in *Zockert*. Accordingly, we conclude that father's first assignment of error is preserved.

■ We now turn to whether father was entitled to appointed counsel under Article I, section 20, of the Oregon Constitution. Article I, section 20, provides that "[n]o law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens." Or Const, Art I, § 20. *Zockert* involved an adoption under ORS 109.324, which eliminates the requirement of parental consent in a privately initiated adoption when the parent whose rights are to be terminated is found to have wilfully neglected or abandoned the child. The legislature had provided for court-appointed counsel for indigent parents in termination proceedings conducted in juvenile court. *See former* ORS 419.525 (1989).[3] The court identified the relevant class for Article I, section 20, purposes either as parents or as parents facing termination of their parental rights. It held that the members of the class of parents facing termination of their parental rights under ORS chapter 109 were similarly situated to those facing termination under ORS chapter 419. It further held that there was no legitimate basis to distinguish between parents facing termination under one chapter and those facing it under the other and, therefore, that Article I, section 20, of the Oregon Constitution, required an extension of the right to counsel to indigent parents involved in ORS chapter 109 termination proceedings. *Zockert*, 310 Or at 520-24.

The *Zockert* court did not limit the scope of its analysis to the specific statute at issue in that case; rather, it spoke broadly of terminations under ORS chapter 109 and

---

[3] Although ORS chapter 419 has been restructured and the relevant portion renumbered as ORS chapter 419B, the chapter still contains a provision granting indigent parents facing termination in juvenile court the right to appointed counsel. *See* ORS 419B.518.

ORS chapter 419. *Id.* at 520-22. Although there are some differences between the facts that would be at issue in a termination proceeding involving an incarcerated parent under ORS 109.322 and those involving the same parent under ORS chapter 419, those differences do not affect the functions that legal counsel would perform, the importance of those functions, or the stakes at issue for the parties. The *Zockert* court focused on whether the legislature had made a policy choice to distinguish between chapter 109 and chapter 419 termination proceedings, and the court concluded that it had not. *See id.* at 522-23. Nothing that has occurred since *Zockert* suggests that the legislature has made a policy choice to distinguish *among* chapter 109 proceedings for that purpose. Moreover, *Zockert* specifically stated its holding to be

> "that the privilege of having counsel appointed in termination cases under ORS chapter 419 applies equally to terminations by adoption under ORS chapter 109."

*Id.* at 524. In light of that holding, we conclude that the trial court erred in failing to appoint counsel for father.

■■ The last question that we must address is whether the court's failure to appoint counsel for father constitutes harmless error. ORS 19.415(2) states that "[n]o judgment shall be reversed or modified except for error substantially affecting the rights of a party." Under the harmless error doctrine, reversal is not warranted if there is little likelihood that a recognized error affected the result in a case. *See State v. Cole*, 323 Or 30, 36, 912 P2d 907 (1996). Mother and stepfather argue that any error in the court's failure to appoint father counsel was harmless because his consent to the adoption was not required under ORS 109.322. Thus, mother and stepfather assert, apparently as a matter of law, that incarcerated parents facing termination under ORS 109.322 can have no effect on the outcome of adoption proceedings involving their children, because ORS 109.322 effectively dispenses with their rights. Because such a parent can nonetheless prevent the adoption if he or she can show that the adoption is not in the child's best interest and because counsel can be of assistance in making that showing, we reject their contention.

Our conclusion that that argument is meritless is bolstered by the Supreme Court's wholesale rejection of a similar argument in *Cole*. In *Cole*, the court held that the defendant's uninformed waiver of his right to counsel at a suppression hearing was not harmless error. The state argued that, because the defendant could not have won at the suppression hearing, the error was harmless. The court rejected the state's premise that a court can make an after-the-fact determination of what the outcome of a hearing would have been, had the defendant been represented by counsel:

> "Under [the state's argument], the right of counsel would be applicable only when the court could say that defendant probably would win with the assistance of counsel. Even if the foregoing argument were otherwise apt, we are unwilling to grant its major premise, because we are unable to determine the outcome of such a hearing, if it had been conducted with assistance of defense counsel to cross examine and if defense testimony and other relevant evidence had been offered. That branch of the state's harmless error argument fails."

*Cole*, 323 Or at 36. Here, as in *Cole*, it is impossible to say whether the trial court would have determined the adoption to be in the child's best interest if father had had the opportunity to investigate stepfather's fitness as a parent and to make a more competent showing of his own fitness. In addition, mother and stepfather both testified in the proceeding but neither was cross-examined. It is impossible to know now what effect cross-examination might have had on the trial court's decision on the merits. Although *Cole* dealt with a criminal defendant's right to counsel, there is no reason why its harmless error analysis should not apply to other cases in which an indigent is denied the right to appointed counsel. Accordingly, we reject mother's and stepfather's harmless error argument. The judgment terminating father's parental rights and permitting the adoption must be reversed, and a new adoption proceeding held.

Reversed and remanded.