Argued and submitted October 12, 2001, affirmed May 8, 2002

## Glenda P. DURHAM,
*Appellant,*

*v.*

## CITY OF PORTLAND,
a municipal corporation;
and Robert Phillips,
*Respondents.*

### 9902-92117; A109538

45 P3d 998

Thane W. Tienson argued the cause for appellant. With him on the briefs was Landye Bennett Blumstein LLP.

Jenifer Johnston, Deputy City Attorney, argued the cause and filed the brief for respondents.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

KISTLER, J.

**KISTLER, J.**

This is the fourth action that plaintiff has brought against her former employer, the City of Portland, and her former supervisor, Robert Phillips. In this action, plaintiff alleged that the City had discriminated against her because she was a woman and that it had retaliated against her for complaining about its employment practices. She also alleged that Phillips had assaulted her. The trial court dismissed plaintiff's assault claim and granted summary judgment on her discrimination and retaliation claims. We affirm.

In 1994, plaintiff began work as a human resource analyst in the City's affirmative action office.[1] Phillips was the director of that office. On April 1, 1995, various people approached plaintiff during a meeting and expressed interest in the office. Plaintiff referred them to Phillips. Shortly afterwards, Phillips walked up to plaintiff and "socked her" on the arm, apparently in response to plaintiff's having referred people to him. Plaintiff reported the incident to her immediate supervisor. The supervisor confronted Phillips, who denied hitting plaintiff.

In December 1995, plaintiff was involved in a car accident. Shortly after that, she underwent surgery and chemotherapy for breast cancer. She was out of work for several months, recovering from both the accident and the surgery. In May 1996, her doctor released her to return to work on a part-time basis. Plaintiff asked Phillips if she could work part time in the office and part time from her home, an arrangement approved by her doctor so long as she installed ergonomic workstations in her home and her office. Phillips accepted her part-time office work arrangement. He told plaintiff, however, that they needed to develop a work agreement, pursuant to department policy, regarding plaintiff's request to work part time at home.

While plaintiff and Phillips were trying to arrange a work agreement, plaintiff came to believe that Phillips was

---

[1] These facts are taken from the summary judgment record. We set out the facts in the light most favorable to plaintiff.

attempting to prevent her return to work by failing to accommodate her request for an ergonomic work station, a flexible work schedule, and telecommuting privileges. She filed a complaint with the Bureau of Labor and Industries (BOLI) in July 1996. In October 1996, she filed an action in state court against Phillips and the City (State I). She alleged that Phillips and the City had violated *former* ORS 659.030[2] because they had discriminated against her in the terms and conditions of employment and had threatened to fire her if she "continued in her efforts to establish a safe, ergonomic work station at her home." Plaintiff also brought an assault claim against both the City and Phillips, alleging that Phillips was acting within the course and scope of employment when he hit her on the arm in April 1995.

While State I was pending, the City experienced financial problems and made major budget cuts. In its 1997-98 budget, the City eliminated the human resource analyst position in the affirmative action office—the position that plaintiff held. Plaintiff's job was eliminated, and she was laid off.

After plaintiff was laid off, she agreed to voluntarily dismiss her action in State I so that she could file a new state court action, adding claims arising out of her termination. Plaintiff filed a second complaint with BOLI and also a second state court action (State II). In State II, she added an allegation that a substantial factor in her termination was "retaliation and reprisal" for, among other things, her opposition to practices forbidden by state and federal law prohibiting discriminatory treatment on the basis of sex. All told, plaintiff alleged seven claims for relief arising out of the City and Phillips' employment practices. The City moved for summary judgment on plaintiff's first three claims for relief. The trial court granted the motion, ruling that those claims were untimely.[3] After that ruling, four claims for relief remained, one of which was plaintiff's assault claim against Phillips.

---

[2] *Former* ORS 659.030 has been renumbered as ORS 659A.030 (2001).

[3] The trial court reasoned that plaintiff failed to file the first three claims for relief within 90 days after BOLI dismissed her July 1996 complaint.

Plaintiff agreed to dismiss the remaining state law claims so that she could add them to a complaint that she had filed in federal court while State II was pending. In federal court, plaintiff alleged numerous federal and state law claims against Phillips and the City. Three of her federal law claims for relief are relevant to this appeal. In her amended federal complaint, plaintiff alleged that the City had discriminated against her in the terms and conditions of her employment in violation of Title VII of the Civil Rights Act, 42 USC § 2000e. She also alleged that the City had discriminated against her in violation of 42 USC § 12201 because she had complained about Phillips' assaultive behavior. Finally, plaintiff alleged that the City had retaliated against her in violation of Title VII. Specifically, she alleged that the City had created a hostile work environment and terminated her employment in retaliation for "bringing a civil proceeding against both defendants City of Portland and Phillips, and by participating in an investigation of defendant Phillips conducted by" the City. Only one of her state law claims in the federal action is relevant to our analysis. Plaintiff alleged, among other things, an assault claim against Phillips, but this time she alleged that Phillips was not acting within the scope of his employment when he hit her. The federal district court granted summary judgment on plaintiff's federal claims. It declined to exercise supplemental jurisdiction over her state claims and dismissed them.

After the district court dismissed plaintiff's state claims, she filed a new action in state court (State III), alleging three claims for relief. Her first claim for relief alleged an assault claim against Phillips. Her second claim for relief was based on *former* ORS 659.030. In that claim, she alleged that the City had discriminated against her in the terms and conditions of her employment and that it had terminated her because she had filed a complaint alleging sex discrimination. Plaintiff's third claim for relief echoed the second aspect of her second claim for relief. She alleged that the City had violated *former* ORS 659.550[4] by "creating a hostile work

---

[4] *Former* ORS 659.550 has been renumbered as ORS 659A.230 (2001).

environment and ultimately terminating her from employment" because she filed a civil proceeding against Phillips and the City.

The trial court dismissed plaintiff's assault claim because it was barred by the two-year statute of limitations. It also granted summary judgment on plaintiff's sex discrimination and retaliation claims. Plaintiff has appealed, raising three assignments of error.

■ In her first assignment of error, plaintiff argues that her assault claim is not time barred. Plaintiff does not dispute that her assault claim in State III was filed beyond the applicable two-year statute of limitations. She argues, however, that her assault claim in State III relates back to her timely assault claim in State I, either by agreement or by operation of law under ORCP 23 C. Because plaintiff's first assignment of error depends upon a more complete understanding of the details of the various assault claims that she has brought over the course of this litigation, we lay out, in greater detail, the procedural history of those claims. We note that, in examining whether the trial court properly granted the City's motion to dismiss under ORCP 21 A(9), we are limited to the face of the complaint in State III.[5] *Ramex, Inc. v. Northwest Basic Industries*, 176 Or App 75, 85, 29 P3d 1211 (2001); *O'Gara v. Kaufman*, 81 Or App 499, 503, 726 P2d 403 (1986). We do not consider any of the evidence set out in either the City's summary judgment motion or in plaintiff's response to that motion.

■ Plaintiff filed State I in October 1996. In her complaint, she alleged:

"At all material times, defendant Phillips was an employee of defendant City of Portland, working as an Affirmative Action Officer, and the direct supervisor of the plaintiff, and acting within the course and scope of his employment.

"* * * * *

---

[5] This is not to say that we are bereft of information. Including attachments, plaintiff's complaint in State III is 116 pages long.

"In or about May, 1995, plaintiff was struck by defendant Phillips with his fist, causing her physical pain and substantial fear and emotional distress, and resulting in the onset of panic attacks. Defendant Phillips engaged in a pattern and practice of such assaultive behavior with respect to other employees and this was known or reasonably should have been known by defendant City of Portland.

"* * * * *

"The acts of defendant Phillips in striking the plaintiff [were] assault and battery, for which defendants are liable to plaintiff. Defendant City of Portland is vicariously liable for the conduct of defendant Phillips."

As noted, while State I was pending, plaintiff was terminated. She wanted to add additional claims arising out of her termination, and the parties agreed that State I would be dismissed without prejudice and with certain conditions. Their agreement (the tolling agreement) stated:

"[A]ll claims for relief asserted by plaintiff in this matter, and that are asserted again by plaintiff in the action to be filed on her behalf against the defendants, will be considered to have been filed as of the date the original Complaint was filed in this matter (October 1996), and no defenses will be asserted by the defendants that could not have been validly asserted had this lawsuit not been dismissed."

Plaintiff then filed State II on September 1997. As in State I, plaintiff alleged an assault claim against the City[6] and Phillips, whom plaintiff again alleged was acting within the course and scope of his employment at all times.

In response to State II, defendants moved to dismiss the assault claim against Phillips. Plaintiff, in turn, moved to amend her complaint to allege that Phillips was acting outside the scope of his employment when he allegedly assaulted her. The trial court denied defendants' motion and granted plaintiff's. Although the court allowed plaintiff to file an amended complaint, she did not do so. Defendants then filed a motion for summary judgment, in part on the ground that

---

[6] Plaintiff voluntarily dismissed her assault claim against the City on August 3, 1998.

some of plaintiff's claims were time barred. Before argument on the motion, however, the parties agreed that the trial court should limit its ruling on the summary judgment motion to plaintiff's first three claims. Plaintiff voluntarily dismissed her assault claim (and several of her other claims) so that she could add them to her pending federal action.

Plaintiff then amended her federal complaint, adding an assault claim against Phillips. For the first time, she alleged that Phillips was acting outside the scope of his employment when he assaulted her. Consistently, she did not claim that the City was vicariously liable for Phillips' assault, as she had in State I and State II. As noted, the district court granted the City's summary judgment motion on plaintiff's federal claims and dismissed her state law assault claim, declining to exercise supplemental jurisdiction over it.

Finally, plaintiff filed State III and included an assault claim against Phillips.[7] Defendants moved to dismiss plaintiff's assault claim because it was time barred. *See* ORCP 21 A(9). The trial court granted the motion. It reasoned that, because the alleged assault occurred in April 1995 and because plaintiff did not assert a claim against Phillips individually until the federal action was filed in January 1998, the assault claim against Phillips in State III was filed too late.

On appeal, plaintiff does not dispute that her assault claim in State III is time barred unless it somehow relates back to the assault claim in State I. She argues, however, that the claim in State III relates back to the claim in State I for two reasons. First, she argues that, by operation of various "links" or "bridges" between her lawsuits, the assault claim in State III will be considered to have been filed as of the date of State I. More specifically, she argues that the statute of limitations was tolled by the tolling agreement between State I and State II, by an informal agreement

---

[7] The complaint in State III does not specifically allege that Phillips was acting outside the course and scope of employment when he hit plaintiff. The parties, however, have interpreted it that way below and on appeal. To the extent that plaintiff intended to allege that Phillips was acting within the scope of his employment when he hit her, that claim would be barred by the failure to give timely tort claim notice.

between State II and the federal action, and by operation of law between the federal action and State III. In order for plaintiff's first argument to succeed, each link or bridge between her various actions must suffice to toll the statute of limitations. As explained more fully below, plaintiff's argument fails at the first link—the tolling agreement between State I and State II.

The tolling agreement provides that the statute of limitations will be tolled for those "claims for relief asserted by plaintiff [in State I]." As noted, in State I, plaintiff had alleged that Phillips was acting within the scope of his employment when he hit her. More than two years later, she sought to allege for the first time that Phillips was acting outside the scope of his employment when he hit her. The question whether the parties' agreement tolls the statute of limitations reduces to the question whether the claim that Phillips was acting outside the scope of his employment is the same as the claim that he was acting within the scope of his employment. In answering that question, we look to the various formulations of the Tort Claims Act and the judicial decisions interpreting them. .

Before the Tort Claims Act was enacted in 1967, public employees enjoyed no immunity from suit for their torts. *See Krieger v. Just*, 319 Or 328, 331-32, 876 P2d 754 (1994). The legislature extended limited immunity to public employees in 1977 and conditioned the right to bring a claim against public employees on timely tort claim notice. Or Laws 1977, ch 823, § 3. In *Krieger*, the court explained that the statutory right to bring a tort claim against a public employee recognized in the Tort Claims Act did not displace the preexisting common-law right to bring a tort claim against the employee in his or her individual capacity. 319 Or at 337.[8] *Krieger* accordingly held that, as of 1988, a plaintiff

---

[8] ORS 30.275(1) provides that "[n]o action arising from any act or omission of a public body or an officer, employee or agent of a public body within the scope of ORS 30.260 to 30.300 shall be maintained unless notice of claim is given as required by this section." In *Krieger*, the court explained that the notice requirement for claims "within the scope of ORS 30.260 to 30.300" referred to "claims made possible and authorized by the Oregon Tort Claims Act, not a previously existing common-law negligence claim against an individual." 319 Or at 337. It followed, the court concluded, that

"the sentence requiring notice for such claims does not, by its terms, cover the circumstances in this case, because this case does not purport to be *either* an

could bring a tort claim against a public employee in his or her individual capacity for actions the employee took within the scope of employment and that no tort claim notice was required for that claim. *Id.* at 331, 340.

■■ In 1991, the legislature amended ORS 30.265(1). As amended, that subsection provides:

> "The *sole* cause of action for any tort of officers, employees or agents of a public body acting within the scope of their employment or duties and eligible for representation and indemnification under ORS 30.285 or 30.287 shall be an action against the public body only."

(Emphasis added.) ORS 30.265(1), as amended, requires that any tort claim against a public employee for acts taken within the scope of employment be brought against a public body and pursuant to the terms of the Tort Claims Act. After the 1991 amendment, a plaintiff may still bring a tort claim against a public employee in his or her individual capacity, but only for acts taken outside the scope of employment. *Berry*, 141 Or App at 228. A claim against a public employee in his or her individual capacity would not require timely tort claim notice. *See Krieger*, 319 Or at 331, 340.

■ . As *Krieger* recognized, a tort claim against a public employee under the Tort Claims Act differs from a tort claim against a public employee in his or her individual capacity. *See* n 8 above. After the 1991 amendment to ORS 30.265(1), the distinguishing feature of the two claims is whether the acts that give rise to the tort claim occurred within or outside the scope of employment. The allegations in the complaint determine which claim a plaintiff wishes to pursue. *See Berry*, 141 Or App at 231-32.

Here, plaintiff chose to pursue a claim against Phillips in his individual capacity in State III. That is not the

---

action against a public body *or* an action against an employee of a public body, *qua* employee."

*Id.* (emphasis in original). Rather, the action in *Krieger* was an action against an employee in her individual capacity, which required no tort claim notice. *Id.* The court's reasoning in *Krieger* rests on the premise that the statutory right to bring a tort claim against a public employee recognized in the Tort Claims Act is separate from the common-law right to bring a tort claim against a public employee in his or her individual capacity.

same claim that she pursued against him in State I. The tolling agreement provided that defendants would not raise a statute of limitations defense against the claims asserted by plaintiff in State I, but it did not preclude them from raising that defense against the separate assault claim that plaintiff alleged in State III. Plaintiff's first argument for saying that the assault claim in State III relates back to the assault claim in State I fails.

■ Plaintiff advances a second argument. She argues that, even if the agreements are not sufficient to toll the statute of limitations, ORCP 23 C provides a basis for saying that the assault claim in State III relates back to the assault claim in State I. ORCP 23 C provides, in part:

> "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

By its terms, ORCP 23 C applies only to amendments within the same action. *See State v. Arnold,* 320 Or 111, 119, 879 P2d 1272 (1994) (applying the rules for interpreting statutes to the rules of civil procedure); *Guerin v. Beamer,* 163 Or App 172, 174, 986 P2d 1241 (1999) (same). It sets out the terms on which an "amended pleading" will relate back to the "original pleading"; it says nothing about later actions relating back to earlier ones.

■ The context leads to the same conclusion. ORCP 23 sets out the process for amending or supplementing a pleading within the same action. It does not address the relationship between actions, and there is no reason to think that ORCP 23 C was intended to have a broader reach than the larger rule of which it is a part. Based on its text and context, we hold that ORCP 23 C provides no basis for saying that a claim in one action relates back to a claim in another action. *Accord Bailey v. Northern Indiana Public Service Co.,* 910 F2d 406, 412 (7th Cir 1990) (so interpreting FRCP 15(c)).[9]

---

[9] The court recognized in *Welch v. Bancorp Management Services,* 296 Or 208, 221, 675 P2d 172 (1983), that, although ORCP 23 C is identical to FRCP 15(c), care should be taken in relying on the federal courts' interpretation of their rule. The reason for that concern is that notice pleading is sufficient in federal courts while

The trial court correctly ruled that plaintiff's assault claim against Phillips was time barred.

■ We turn to plaintiff's second assignment of error, which is directed at the trial court's ruling on her second claim for relief. Plaintiff's second claim for relief alleges:

> "The acts of defendant City of Portland constitute unlawful employment practices pursuant to ORS 659.030(1)(a), (b), and (f), in that defendant City of Portland unjustifiably discriminated against plaintiff on the basis of her sex as to the terms, conditions and/or privileges of her employment, and unlawfully terminated her from its employ because she opposed practices forbidden by ORS Chapter 659 and other laws, or because she filed a complaint alleging violations of Chapter 659."

Relying on issue preclusion, the City moved for summary judgment on that claim. It noted that the federal district court had granted summary judgment on plaintiff's Title VII claims and entered judgment against her. Specifically, the federal court had ruled that the City had not discriminated against plaintiff on the basis of her sex or retaliated against her for complaining about the City's employment practices. It followed, the City reasoned, that plaintiff was precluded from relitigating those issues in state court. The trial court agreed and granted the City's summary judgment motion.

Plaintiff assigns error to that ruling. On appeal, she does not dispute that the allegations in her second claim for relief mirror the Title VII allegations that the federal district court resolved. Not only are the underlying allegations substantively the same, but the ultimate fact at issue in both claims is whether the City treated plaintiff differently in the terms and conditions of her employment because of her sex. *See St. Mary's Honor Center v. Hicks*, 509 US 502, 519, 113 S Ct 2742, 125 L Ed 2d 407 (1993); *United States Postal Service Board of Governors v. Aikens*, 460 US 711, 715, 103 S Ct

---

pleadings in Oregon courts must state ultimate facts. *Id.* The difference between notice and fact pleading, however, has no bearing on the question presented in this case. We accordingly find the Seventh Circuit's interpretation of FRCP 15(c) in *Bailey* persuasive in deciding that question. *See Welch*, 296 Or at 222 (following federal authority in interpreting ORCP 23 C after noting the differences between the two rules).

1478, 75 L Ed 2d 403 (1983); *Winnett v. City of Portland,* 118 Or App 437, 442-43, 847 P2d 902 (1993).[10] Similarly, plaintiff does not dispute that she must prove both her state and federal claims by a preponderance of the evidence. Her argument turns instead on the proposition that, because the methodology that federal courts employ in evaluating evidence in Title VII claims differs from the methodology state courts use, summary judgment may be available to employers in federal court when it is unavailable to them in state court. That difference, she contends, makes issue preclusion inapplicable.

■ As plaintiff notes, the state and federal courts have adopted different methodologies for evaluating evidence in disparate treatment claims. *See Hardie v. Legacy Health System,* 167 Or App 425, 434, 6 P3d 531 (2000). The fact, however, that the two methodologies differ in some respects does not necessarily mean that issue preclusion does not apply. *See In re Robert Neil Gygi,* 273 Or 443, 448, 541 P2d 1392 (1975); *Ron Tonkin Gran Turismo v. Wakehouse Motors,* 46 Or App 199, 207 & n 2, 611 P2d 658, *rev den* 289 Or 373 (1980). Rather, in determining whether the trial court correctly applied issue preclusion, we first consider the similarities and differences between the two methodologies. We then turn to the question whether the differences make issue preclusion inapplicable.

■ In resolving a motion for either summary judgment or directed verdict in disparate treatment claims, Oregon courts follow the same methodology that they would in any other case. *See City of Portland v. Bureau of Labor and Industries,* 298 Or 104, 114-15, 690 P2d 475 (1984). Viewing all the evidence in the light most favorable to the nonmoving party, they ask whether the trier of fact reasonably could infer that the defendant discriminated against the plaintiff

---

[10] Plaintiff does not argue that this is a mixed-motive case, one in which the City acted for both permissible and impermissible reasons. *See Hardie v. Legacy Health System,* 167 Or App 425, 434, 6 P3d 531 (2000), *rev den* 332 Or 656 (2001) (lead opinion) (distinguishing mixed-motive from pretext claims under state discrimination law); *id.* at 441 (Deits, C. J., concurring). Rather, the question, as plaintiff has argued it, is whether the City's stated reasons for its actions were its true reasons or were instead a pretext for discrimination.

in the terms or conditions of work because of the plaintiff's sex, race, or other protected characteristic. *Id.* If that inference may reasonably be drawn, then the claim should be submitted to the trier of fact. *Id.*

The federal courts engage in a more formal analysis, allocating the order and presentation of evidence "to bring the litigants and the court expeditiously and fairly to th[e] ultimate question" of discrimination. *Texas Department of Community Affairs v. Burdine*, 450 US 248, 253, 101 S Ct 1089, 67 L Ed 2d 207 (1981). The Court summarized that methodology in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 US 133, 120 S Ct 2097, 147 L Ed 2d 105 (2000).[11] It explained:

> "*McDonnell Douglas* and subsequent decisions have 'established an allocation of the burden of production and an order for the presentation of proof in . . . discriminatory treatment cases.' *St. Mary's Honor Center v. Hicks*, 509 US [at 506]. First, the plaintiff must establish a prima facie case of discrimination. *Ibid.*; *Texas Dept. of Community Affairs v. Burdine*, 450 [US at 252-53]. It is undisputed that petitioner satisfied this burden here * * *.[12] The burden therefore shifted to respondent to 'produc[e] evidence that the plaintiff was rejected, or someone else preferred, for a legitimate, nondiscriminatory reason.' *Burdine, supra*, at 254. The burden is one of production, not persuasion; it 'can involve no credibility assessment.' *St. Mary's Honor Center, supra*, at 509. Respondent met this burden by offering admissible evidence sufficient for the trier of fact to conclude that petitioner was fired because of his failure to

---

[11] The Court decided *Reeves* after the federal district court decided this case. The portion of *Reeves* that we quote, however, summarizes pre-existing law. We also note that the Ninth Circuit had correctly anticipated the issue that had divided the circuits and prompted the Court to grant certiorari in *Reeves*. *See* 530 US at 140-41.

[12] A plaintiff may establish a *prima facie* case, as the Court has used that term in disparate treatment cases, by showing:

"(i) [T]hat he belongs to a racial [or other protected] minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications."

*McDonnell Douglas Corp. v. Green*, 411 US 792, 802, 93 S Ct 1817, 36 L Ed 2d 668 (1973).

maintain accurate attendance records. * * * Accordingly, 'the *McDonnell Douglas* framework—with its presumptions and burdens'—disappeared, *St. Mary's Honor Center*, *supra*, at 510, and the sole remaining issue was 'discrimination *vel non.*' *Aikens, supra*, at 714.

"Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' *Burdine*, 450 [US] at 253. And in attempting to satisfy this burden, the plaintiff—once the employer produces sufficient evidence to support a nondiscriminatory explanation for its decision—must be afforded the 'opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.' *Ibid*; *St. Mary's Honor Center, supra*, at 507-508. That is, the plaintiff may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence.' *Burdine, supra*, at 256. Moreover, although the presumption of discrimination 'drops out of the picture' once the defendant meets its burden of production, *St. Mary's Honor Center, supra*, at 511, the trier of fact may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual,' *Burdine, supra*, at 255, n. 10."

*Reeves*, 530 US at 142-43.

The Court has repeatedly reaffirmed that the methodology set out in *McDonnell Douglas Corp.* was " 'never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.' " *Aikens*, 460 US at 715 (quoting *Furnco Construction Corp. v. Waters*, 438 US 567, 577, 98 S Ct 2943, 57 L Ed 2d 957 (1978)); *see also St. Mary's Honor Center*, 509 US at 519. In the federal system, a court looks first at the plaintiff's evidence to see if he or she has presented enough evidence to require the defendant to articulate the basis for

its action. If the plaintiff has, the court looks at the defendant's evidence to see if it has articulated a legitimate, nondiscriminatory reason for its action. If the defendant has, the court reaches the question with which Oregon courts begin: Whether, on the record as a whole, the evidence permits a reasonable inference that the plaintiff was the victim of intentional discrimination. *Reeves,* 530 US at 146-47; *St. Mary's Honor Center,* 509 US at 518; *Aikens,* 460 US at 715. A trier of fact may "infer the ultimate fact of discrimination from the falsity of the employer's explanation," *Reeves,* 530 US at 147, or it may look to other evidence to draw that inference, *id.* at 147; *St. Mary's Honor Center,* 509 US at 519; *Aikens,* 460 US at 715. If the evidence, viewed as a whole, reasonably permits an inference that the defendant acted for discriminatory reasons, the case should be submitted to the trier of fact. *Aikens,* 460 US at 715.

■ With that background in mind, we turn to the question whether the federal district court's finding that plaintiff had failed to prove that the City discriminated against her in violation of Title VII precludes her from relitigating that issue here. Issue preclusion applies if:

"1. The issue in the two proceedings is identical.

"2. The issue was actually litigated and was essential to a final decision on the merits in the prior proceeding.

"3. The party sought to be precluded has had a full and fair opportunity to be heard on that issue.

"4. The party sought to be precluded was a party or was in privity with a party to the prior proceeding.

"5. The prior proceeding was the type of proceeding to which this court will give preclusive effect."

*Nelson v. Emerald People's Utility Dist.,* 318 Or 99, 104, 862 P2d 1293 (1993) (citations omitted).

Plaintiff's argument goes to the fifth factor set out in *Nelson.*[13] She argues that, because of the different way that

---

[13] In her brief, plaintiff contends that her objection goes to the first, second, and fifth *Nelson* factors. The issues in both proceedings, however, are substantively identical. Moreover, the issue was litigated and essential to a final decision in the federal court. Plaintiff's objection to issue preclusion properly is limited to the fifth factor in *Nelson.*

state and federal courts analyze disparate treatment claims, the federal proceeding is not the type of proceeding to which we should give preclusive effect. *See In re Robert Neil Gygi*, 273 Or at 448 (explaining that issue preclusion "is not applicable when the standard of proof in the second proceeding is greater than that which applied in the first"). In explaining that consideration, the court in *Gygi* quoted from what was then the tentative draft of *The Restatement (Second) of Judgments*:

> " '[R]elitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:
>
> "* * * * *
>
> " '(d) The party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action; the burden has shifted to his adversary; or the adversary has a significantly heavier burden than he had in the first action.' "

*In re Robert Neil Gygi*, 273 Or at 448 (Tentative Draft No. 1, March 28, 1973).[14]

This is not a case in which the federal courts require proof by a preponderance of the evidence and we require proof by clear and convincing evidence. *See In re Robert Neil Gygi*, 273 Or at 447-48; *Ron Tonkin Gran Turismo*, 46 Or App at 207 & n 2. Rather, this is a case in which both the state and federal courts require proof by a preponderance of the evidence. And although the state and federal courts go about examining evidence of discrimination differently to determine if the plaintiff has satisfied the burden of production, the differences in methodology lie more in form than in substance. The federal methodology acts as a pleading device to frame and "progressively * * * sharpen the inquiry into the elusive factual question of intentional discrimination." *Burdine*, 450 US at 254 n 8. The factual inquiry, however, remains the same as it does in state court: Whether a reasonable juror could infer that " 'the defendant intentionally discriminated against the plaintiff.' * * * In other words, is the

---

[14] The tentative draft has been adopted verbatim, except for minor variations. *See Restatement (Second) of Judgments* § 28(4) (1980).

'employer treating "some people less favorably than others because of their race, color, religion, sex, or national origin." ' " *Aikens*, 460 US at 715 (quoting *Furnco Construction Corp.*, 438 US at 577).

Having considered the way that the state and federal courts go about examining evidence of discrimination, we conclude that the differences in the order and presentation of evidence do not provide a reason why issue preclusion should not apply. We accordingly hold that the federal district court's resolution of plaintiff's Title VII sex discrimination and retaliation claims precludes her from relitigating those issues in state court.[15]

 Plaintiff's final assignment of error is directed at the trial court's ruling on her third claim for relief. In that claim, plaintiff alleged:

> "As a result of the actions taken against plaintiff by defendant Phillips in 1996 as set forth above, plaintiff, in good faith, brought a civil proceeding against both defendants. Defendant City of Portland, acting through defendant Phillips, in response to and in retaliation for bringing that civil proceeding, punished plaintiff by creating a hostile work environment and ultimately terminating her from employment."

The trial court granted summary judgment on plaintiff's third claim for relief because "there [was] no direct evidence of retaliation and any inference to that effect would be based upon impermissible speculation." On appeal, plaintiff argues that the evidence permits a reasonable inference that the City terminated her because she filed a complaint with BOLI in July 1996 and State I in October 1996. The City defends the court's ruling on the merits, but it also asserted at oral

---

[15] We note that the federal district court entered judgment against plaintiff on her Title VII sex discrimination claim because there was no evidence that the City's reasons for its actions were pretextual. It entered judgment against plaintiff on her Title VII retaliation claim because she failed to establish that the City's actions toward her were caused by filing the complaint with BOLI. Additionally, the court found that there was no evidence that the City's articulated reason for eliminating her position—namely, budget cuts—was pretextual, or not the real reason for its action. The federal district court's resolution of those issues resolves plaintiff's second claim for relief.

argument that plaintiff's third claim for relief is barred by issue preclusion.

We note, at the outset, that the City did not argue below that issue preclusion bars plaintiff's third claim for relief. Plaintiff accordingly focused her argument on appeal on whether the trial court erred in saying that there was no genuine issue of material fact on that claim. The pleadings reveal, however, that plaintiff alleged, in her second claim for relief, that the City terminated her "because she opposed practices forbidden by ORS Chapter 659 and other laws, or because she filed a complaint alleging violations of Chapter 659." The City has argued below and on appeal that the second claim for relief, which includes a retaliation claim, is barred by issue preclusion. Plaintiff has responded to that argument, and we have agreed with the City on that point.

Plaintiff's third claim for relief is based solely on retaliation. Plaintiff alleged that the City created a hostile work environment and terminated her because she filed a civil proceeding. On its face, plaintiff's third claim for relief echoes the allegations in her second claim for relief and, more particularly, mirrors the allegations in her Title VII retaliation claim in federal court. We accordingly asked the parties at oral argument whether issue preclusion applied to plaintiff's third claim for relief. We also asked the parties to submit supplemental briefing on the questions raised at oral argument. Both parties took advantage of that opportunity, and plaintiff has explained why, in her view, the district court's resolution of her Title VII retaliation claim does not bar her third claim for relief in this action.

13. We may affirm the trial court's ruling on a ground that was not raised below if:

> "(1) * * * [T]he facts of record [are] sufficient to support the alternative basis for affirmance; (2) * * * the trial court's ruling [is] consistent with the view of the evidence under the alternative basis for affirmance; and (3) * * * the record materially [is] the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below."

*Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001); *accord State v. Maddox*, 165

Or App 573, 576, 997 P2d 276, *rev den* 331 Or 244 (2000). In explaining why issue preclusion does not bar her third claim for relief, plaintiff does not argue that any of those conditions was not met. She also has had an opportunity to brief issue preclusion in her supplemental brief. We accordingly conclude that it is appropriate to reach the question whether issue preclusion bars her third claim for relief.

■ The federal district court rested its ruling that the City had not retaliated against plaintiff on two grounds. It reasoned:

> "The Title VII retaliation claim fails for two reasons. First, [plaintiff] has failed to establish the causal link prong of her *prima facie* case. The failure to accommodate her began before she filed [her first complaint with BOLI] and continued in the same fashion afterwards. There is no evidence of increased severity after the filing and thus no evidence that any of the failure to accommodate was in retaliation for engaging in protected activity. Her termination came a year after the administrative filing. That is too long of a period to establish a causal link due to proximity in time. There is no direct evidence of discriminatory motive.

> "Moreover, as discussed above [in connection with plaintiff's Title VII sex discrimination claim], [plaintiff] has not produced enough evidence that the reason for her termination was a pretext to survive summary judgment.[16] The same analysis applies if the termination is considered to be a retaliatory action."

Based on that reasoning, the district court found that the City had not retaliated against plaintiff either in the terms or

---

[16] The federal district court had explained, in connection with plaintiff's sex discrimination claim:

"It is uncontested that a position had to be eliminated. Although Tate [plaintiff's immediate supervisor] clearly disagree[d] with Phillips' final choice, I do not see evidence of pretext. Phillips was originally leaning towards Tate's suggestion of eliminating the diversity position, but changed his mind based on specific reasons listed above. Once he changed his mind, he apparently told Tate that he would not consider eliminating the diversity position. There is nothing before me showing that the City had an obligation to bump another employee to allow [plaintiff] to keep a job. [Plaintiff] has failed to bring forth evidence of a false reason for the elimination of her position or that the true reason is a discriminatory one. She has only brought forth evidence that Phillips' decision was not appreciated by [her] and her supervisor, the two people most affected in the two-person [affirmative action] unit."

conditions of her employment or in eliminating her position during the budget crisis.

On appeal, plaintiff advances three reasons why the federal district court's resolution of her federal retaliation claim does not bar her state retaliation claim. She argues initially that *former* ORS 659.550, the basis for her third claim for relief, protects against retaliation for whistle blowing while Title VII protects against retaliation for complaints of sex discrimination. In this case, however, plaintiff's complaints of sex discrimination were also the complaints that allegedly led to retaliation forbidden by *former* ORS 659.550. The district court's finding that the City did not retaliate for filing those complaints is a complete answer to plaintiff's claim under *former* ORS 659.550.

Plaintiff argues next that her Title VII retaliation claim is based on retaliation for filing the first BOLI complaint while her third claim for relief is based on retaliation for filing the first BOLI complaint *and* State I. She notes that, in ruling that there was no evidence of retaliation, the federal district court relied on the fact that her termination came a year after she filed the BOLI complaint. She reasons that, because her termination came nine months after she filed State I, the district court's finding has no application to her third claim for relief. The difficulty with plaintiff's argument is that the district court based its finding that the City did not retaliate against plaintiff on alternative grounds. It also explained that there was no evidence that the City's articulated reason for eliminating plaintiff's position during its budget crisis was pretextual or in retaliation for filing complaints against the City. That rationale applies with equal force to plaintiff's third claim for relief.[17]

Finally, plaintiff argues that the federal district court misconstrued the evidence. In her view, there was sufficient evidence from which a reasonable trier of fact could

---

[17] In the trial court, plaintiff relied on substantially the same evidence and arguments to show that the City retaliated against her for filing the first BOLI complaint that she now relies on to show that it retaliated against her for filing the first BOLI complaint and State I; put another way, there is no legitimate basis for suggesting that we should treat the two events differently for the purposes of issue preclusion. *See Restatement (Second) of Judgments* § 27 cmt c, illus 7 (1982).

have found that the City retaliated against her for filing complaints about the City's employment practices. In determining whether issue preclusion applies, we do not ask whether the district court reached the right answer. Rather, we ask whether plaintiff had a fair opportunity to litigate the same issue in district court. If she had, the district court's resolution of that issue precludes further litigation. Issue preclusion gives effect to the principle that, at some point, litigation should come to an end. That principle applies here.

Affirmed.