Argued and submitted June 10, affirmed December 15, 2010, petition for review denied May 5, 2011 (350 Or 297)

Alice M. CHRISTIANSON,
*Plaintiff-Appellant,*

*v.*

STATE OF OREGON
and Pat Larson,
*Defendants-Respondents.*

Lane County Circuit Court
160717587; A141686

244 P3d 904

Stephen L. Brischetto argued the cause for appellant. With him on the briefs were Matthew Ellis and Kell Alterman & Runstein LLP.

Tiffany Keast, Assistant Attorney General, argued the cause for respondents. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Rosenblum, Judge.

SCHUMAN, P. J.

**SCHUMAN, P. J.**

Plaintiff retired from her position with the Oregon Department of Human Services (DHS) in 2003. Three years later, having apparently reconsidered, she twice applied for a full-time position with the same agency. On neither occasion was she hired. Subsequently, she brought claims against the state for, among other things, age discrimination and defamation. Against her former supervisor at DHS, who had provided a negative reference, she brought claims of defamation and intentional interference with prospective employment. The trial court granted summary judgment in favor of both defendants on the defamation and intentional interference claims and, after a bench trial, ruled in favor of the state on the age discrimination claim. Plaintiff raises three assignments of error on appeal. First, she asserts that the trial court erred in concluding that DHS did not engage in age discrimination. Second, she argues that the trial court erred in sustaining defendant's objection to testimony from a member of the hiring committee regarding whether the member believed that certain statements reflected stereotypes about older workers. Finally, she contends that there were genuine issues of material fact that precluded summary judgment on the defamation and intentional interference claims. We affirm.

The following facts are undisputed. Plaintiff was employed by DHS (or its predecessors) in the child welfare division for approximately 16 years before she retired in 2003. For much of that time, plaintiff worked part time as a drug and alcohol specialist; she also sometimes worked as an ongoing caseworker. Two years after her retirement, in 2005, she again worked for DHS, this time as a temporary employee. In June of 2006 plaintiff applied for a full-time position as a caseworker. She listed defendant Larson as a reference; Larson had been her supervisor at DHS for a period immediately prior to plaintiff's retirement. Larson was aware that plaintiff and Larson's husband had had a personal relationship at one point before Larson's marriage.

Although plaintiff's performance evaluations, the last of which was signed by Larson in 2003, had been positive, the reference in 2006 was decidedly negative. In a telephone conversation with a DHS employee who was acting as

reference checker for the hiring committee, Larson made (and the employee recorded in writing) a number of negative statements regarding plaintiff, including: that she had a hard time working a full-time job; that her job performance was very poor; that she "seemed tired and 'all over the board'"; that her ongoing casework was completely unsatisfactory; that she was slow and could not meet timelines; that she had not adjusted to the agency's newly adopted mission of emphasizing child safety; that she was behind in her work; and that she would not take a position on controversial issues. The written record also reflects that Larson reported that she could not understand "what plaintiff could possibly be thinking * * * [in] applying for a full-time job at this time in her life." When asked to explain the discrepancy between her negative reference and the positive 2003 performance evaluation, Larson later testified that her negative remarks were overstated and spontaneous. She also explained that the reference to "this time in [plaintiff's] life" referred not to plaintiff's age but to the fact that plaintiff had earlier told Larson about plans to start a new business.

The hiring committee, of which Larson was not a member, interviewed plaintiff. At the time of the interview, Larson's conversation with the reference-checker had not occurred; apparently, however, the substance of Larson's negative evaluation was communicated to committee members after the interview and reported by them to higher-level managers, not including Larson. In any event, plaintiff was not offered that caseworker position. The hiring committee members and the other managers later testified that they did not take Larson's reported comments to reflect a concern with plaintiff's age and that the committee did not consider plaintiff's age in deciding not to hire her. DHS ultimately filled nine openings. Eight of the selected applicants were under 40. Shortly after rejecting plaintiff's application for the permanent position, DHS offered her a temporary position, and plaintiff declined it.

A second batch of permanent openings occurred later in 2006, and plaintiff applied for those positions as well. She participated in a group interview. Larson, again, was not on the hiring committee, but another member, Soriano, had learned of Larson's concerns. He related to the committee

that plaintiff was controlling in group exercises, made unwarranted assumptions, and submitted a statement that was hard to follow. Other members of the committee testified that Soriano also related that, before plaintiff retired, she "couldn't keep up with the work." Plaintiff was not hired. Six other applicants were. One was 48 and the others were under 40.

As noted, plaintiff filed an action against the state for, among other things, age-based employment discrimination, defamation, and intentional interference with an economic relationship, and against Larson for defamation and intentional interference with economic relations. The trial court granted summary judgment in favor of defendants on the defamation and intentional interference claims and, after a bench trial, ruled in favor of the state on the age discrimination claim.

■    We begin with that latter ruling. Oregon civil rights law prohibits an employer from refusing to hire an individual "because of an individual's * * * age," ORS 659A.030(1)(a), and allows a person claiming to be aggrieved by a violation to file a civil action against the employer, ORS 659A.885(1)(a). The ultimate factual question that must be addressed in such a civil action is whether the plaintiff has proved that the defendant intentionally discriminated against the plaintiff, that is, whether the defendant treated the plaintiff differently, and adversely, because of her age. *See Durham v. City of Portland*, 181 Or App 409, 425-26, 45 P3d 998 (2002). Here, after an eight-day trial, the trial court sitting as factfinder ruled that plaintiff did not carry her burden, principally because she did not prove that the decision-makers based their decision not to hire her on age. In an ordinary civil case, we would be bound by that finding because, as even plaintiff agrees, there is some evidence to support it. Or Const, Art VII (Amended), § 3. However, pursuant to ORS 659A.885(1)(b), our review of this case is "pursuant to the standard established by ORS 19.415(3)," which, until 2009, called for us to "try the cause anew upon the record," that is, *de novo*.[1]

---

[1] Although ORS 19.415(3) was amended in 2009 to make *de novo* review discretionary, the amendments apply only to cases in which the notice of appeal was filed on or after June 4, 2009. Or Laws 2009, ch 231, §§ 2-3. Because the notice of appeal in this case was filed before that date, the 2007 version of ORS 19.415(3) calling for *de novo* review applies.

■      In exercising *de novo* review, we generally defer to the trial court's demeanor-based credibility findings, express and implied, because the trial court had the opportunity to see and hear the witnesses and we review only a cold record. *State ex rel Juv. Dept. v. G. P.*, 131 Or App 313, 319, 884 P2d 885 (1994). In a thorough letter opinion, the court made the following findings regarding plaintiff's application for the June 2006 openings:

> "Defendant did not hire plaintiff during the June 2006 hiring process for several legitimate, non-discriminatory reasons, and defendant did not make the hiring decision 'because of' plaintiff's age. In fact, the Court is affirmatively persuaded to the contrary: the hiring committee based its decision not to hire plaintiff on legitimate, non-discriminatory concerns. The Court finds Ballard [a member of the hiring committee] to be a very credible witness based on her demeanor and her testimony, and believes her testimony that the hiring committee had concerns about plaintiff's ability to complete work, commit additional time, and to work under the new 'Safety' model. These are valid concerns regardless of age. * * * Ballard also testified, and the Court finds, that age was never discussed by the committee. Although Larson's reference was discussed by the committee, it was just 'one of the pieces of the packet.' The committee did not believe any of Larson's statements to be discriminatory. Nor did the hiring committee adopt them for discriminatory reasons. Abundis [another member of the hiring committee] testified and the Court concludes that the hiring process was fair. Additionally, Radich, an upper level manager, who the Court found to be a very credible witness based on his demeanor and testimony, testified that age was never a determining factor in hiring decisions. * * * Plaintiff was not hired [for the June 2006 positions] for a number of reasons, none of which were related to her age."

The court made similar findings with respect to the October 2006 process:

> "Defendant did not hire plaintiff in the October 2006 hiring decision for several legitimate, non-discriminatory reasons, and defendant did not make the hiring decision 'because of' plaintiff's age. The October 2006 hiring committee did not consider Larson's reference. Although one member of the committee, Soriano, testified he knew something about Larson's opinions, the Court believes that the hiring

committee based its decision not to hire plaintiff on reasons other than Larson's reference and plaintiff's age. As stated above, the Court finds Soriano to be a very credible witness and believes Soriano's testimony that he had concerns that plaintiff seemed 'somewhat controlling' in group exercises, she did not 'give a lot of the other candidates opportunities for their input,' she 'made assumptions during the exercise,' and that her individual statement was 'hard to follow.' He shared these concerns with the hiring committee and they agreed not to move plaintiff forward in the hiring process. The Court concludes that the hiring committee did not consider age at all. * * * Defendant's reasons for not hiring plaintiff were not pretext, but were legitimate, and non-discriminatory."

We have reviewed the record *de novo* and we agree with the court's findings. Neither the bench, the bar, nor the public would benefit from a recital of the parties' arguments; suffice it to say that each side, working from the same basic set of facts, draws opposing inferences, but that the key inferences revolve around what the decision-makers believed and intended.

Plaintiff, however, takes issue with the court's findings for two reasons. First, she argues that the court failed to address and confront some of the evidence that was favorable to plaintiff. We are not aware of anything that would require the court to do so. We presume that, in rendering its decision, the court considered all of the evidence (as have we) and resolved all of the conflicts consistently with its ultimate decision. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968).

Second, plaintiff takes issue with the court's legal analysis. In particular, she argues that, even if the decision-makers acted in good faith and without consciously intending to discriminate based on age, they *unconsciously* applied age-based stereotypes in reaching their decisions, and such unconscious action constitutes a violation of ORS 659A.030. We disagree. Plaintiff styled this case as one alleging disparate treatment, as opposed to disparate impact. Although a disparate impact case may be made out by a showing that a facially neutral policy or criterion has a disproportionally negative impact on a protected class, *see City of Portland v.*

*Bureau of Labor and Ind.*, 298 Or 104, 122-23, 690 P2d 475 (1984) (describing class of cases); *see also Nakashima v. Board of Education*, 344 Or 497, 509 n 13, 185 P3d 429 (2008), a disparate treatment case requires a showing of intentional discrimination, *Durham*, 181 Or App at 425-26. It is true that plaintiff presented an expert witness who testified that some of the criticisms of plaintiff match age-based stereotypes: old people are slow, they are tired, they are resistant to change. It does not follow, however, that whenever an employer bases a decision not to hire an older person because he or she is slow, tired, or resistant to change, that the older person has proved age discrimination. Whether the decisionmaker operated on the basis of stereotypes, conscious or unconscious, or on a more legitimate basis remains a question of fact, and the burden of persuading the factfinder rests with the plaintiff. In this case, the factfinder heard plaintiff's expert testify about stereotypes regarding older people and heard plaintiff's argument about the legal effect of relying on those stereotypes, and remained unpersuaded. We do as well. Accordingly, we reject plaintiff's first assignment of error.

■      In her second assignment of error, plaintiff argues that the court erred in not permitting a witness, Fellez—a member of the October hiring committee—to testify that she "was familiar with age stereotypes," and that certain of the characteristics that were ascribed to plaintiff during the hiring process could be seen as invoking such stereotypes. We are not convinced that the court erred in excluding that testimony. Its purpose would have been to bolster plaintiff's argument that age stereotypes were somehow at work in the hiring process. But the court admitted the testimony of an expert demonstrating that some of the characteristics ascribed to plaintiff matched age stereotypes, and it is difficult to see what Fellez's opinion would add. In any event, to justify reversal, evidentiary error must be prejudicial, that is, it must substantially affect the rights of a party. ORS 19.415(2); *Hunt v. Weiss*, 169 Or App 317, 322, 8 P3d 990 (2000) ("[R]eversal is not warranted if there is little likelihood that a recognized error affected the result in a case."). Even if Fellez's testimony would have added some weight to plaintiff's case, that weight would have been so minimal that it

could not have affected the result. We therefore reject plaintiff's second assignment of error without further discussion.

■ ■    We turn, then, to plaintiff's claim for defamation against the state for Larson's statements. "Oregon recognizes the defenses of qualified privilege and absolute privilege to allegations of defamation. The former requires a plaintiff to prove that a defendant acted with actual malice; the latter bars the defamation claim altogether." *DeLong v. Yu Enterprises, Inc.*, 334 Or 166, 170, 47 P3d 8 (2002). Because we conclude that Larson's statements were absolutely privileged, we need not decide whether they were, in fact, defamatory, nor whether they were entitled to a qualified privilege.

In *Shearer v. Lambert*, 274 Or 449, 452-54, 547 P2d 98 (1976), the Supreme Court held that an employee of an executive agency has an absolute privilege to make defamatory statements in the exercise of official duties, even if the statements were malicious and the person who made the statements is a lower-level employee. That rule has since been reaffirmed on several occasions. *See, e.g., Sandrock v. City of Corvallis*, 58 Or App 312, 648 P2d 382, *rev den*, 293 Or 634 (1982); *Chamberlain v. City of Portland*, 184 Or App 487, 56 P3d 497 (2002).

■    It is true, as plaintiff protests, that defendant did not raise a defense of absolute privilege before the trial court. Nonetheless, under *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 20 P3d 180 (2001), we have discretion to affirm a lower court on a basis that was not before that court if

"certain conditions are met. The first condition is that, if the question presented is not purely one of law, then the evidentiary record must be sufficient to support the proffered alternative basis for affirmance. That requires: (1) that the facts of record be sufficient to support the alternative basis for affirmance; (2) that the trial court's ruling be consistent with the view of the evidence under the alternative basis for affirmance; and (3) that the record materially be the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below. In other words, even if the record contains evidence sufficient to support an alternative basis for affirmance, if the losing

party might have created a *different* record below had the prevailing party raised that issue, and that record could affect the disposition of the issue, then we will not consider the alternative basis for affirmance. The second condition is that the decision of the lower court must be correct for a reason other than that upon which the lower court relied. Third, and finally, the reasons for the lower court's decision must be either (a) erroneous or (b) in the reviewing court's estimation, unnecessary in light of the alternative basis for affirmance."

*Id.* at 659-60 (emphasis in original). Here, the facts establish beyond dispute that Larson was an employee of DHS, an executive agency, and that she rendered her reference in the exercise of her official duties: a hiring committee of the agency for which she worked asked her to provide a reference regarding the work of a person whom she formerly supervised. Thus, the record contains facts that are "sufficient to support the alternative basis for affirmance." *Id.* at 660.[2]

Further, plaintiff suggests no way in which she would have developed a different record had defendant raised an absolute immunity defense, and we can think of none. And finally, the lower court's ruling that granted summary judgment on the basis of qualified immunity is unnecessary in light of our conclusion that, on the facts in the record, absolute immunity applies. Plaintiff's third assignment of error fails because defendants were entitled to absolute immunity.[3]

To prevail on her last assignment of error, that is, that the court erred in granting summary judgment on the claim of intentional interference, plaintiff had to establish an issue of fact as to, among other things, whether there was a

---

[2] An immunity defense need not be expressly pleaded if the complaint on its face alleges facts that are sufficient to establish the defense. *See Franke v. ODFW*, 166 Or App 660, 665-66, 2 P3d 921 (2000). For that reason, this case is distinguishable from those in which we have declined to address alternative bases for affirmance related to unpleaded defenses. *See, e.g., Clemente v. State of Oregon*, 227 Or App 434, 438-40, 206 P3d 249 (2009) (declining to consider issue preclusion as an alternate basis for affirmance where that defense had not been set forth in a responsive pleading).

[3] Our resolution of this assignment of error also disposes of plaintiff's arguments relating to her claim for defamation against Larson individually.

causal relationship between Larson's statements and damage to plaintiff's employment relationship with DHS. *See McGanty v. Staudenraus*, 321 Or 532, 535, 901 P2d 841 (1995). As we have discussed above, the court decided those issues adversely to plaintiff with respect to her age discrimination claim, and we have affirmed that decision. Further, Larson rendered her reference in her capacity as an agent of the employer, acting within the scope of her employment,[4] with respect to a prospective employee; intentional interference with an employment relationship deals only with situations in which a third party interferes with an employee-employer relationship, *McGanty*, 321 Or at 535, and that did not occur here.

Affirmed.

---

[4] For purposes of determining that Larson was acting within the scope of employment in the intentional interference claim, three requirements must be met.

"These requirements traditionally have been stated as: (1) whether the act occurred substantially within the time and space limits authorized by the employment; (2) whether the employee was motivated, at least partially, by a purpose to serve the employer; and (3) whether the act is of a kind which the employee was hired to perform."

*Chesterman v. Barmon*, 305 Or 439, 442, 753 P2d 404 (1988) (citations omitted).