Argued and submitted January 11, reversed on appeal; cross-appeal dismissed as moot May 15, 2013

Ronald DOYLE;
and Benedict Miller,
*Plaintiffs-Respondents,*
*and*

Robert DEUEL;
and Charles Steinberg,
*Plaintiffs-Respondents*
*Cross-Appellants,*

*v.*

CITY OF MEDFORD,
an Oregon municipal corporation;
and Michael Dyal,
City Manager of the City of Medford,
in his official capacity and as an individual,
*Defendants-Appellants*
*Cross-Respondents.*

Jackson County Circuit Court
080137L7; A147497

303 P3d 346

Robert E. Franz, Jr., argued the cause for appellants-cross-respondents. With him on the briefs was Law Office of Robert E. Franz, Jr.

Stephen L. Brischetto argued the cause and filed the briefs for respondents and respondents-cross-appellants.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Duncan, Judge.

DUNCAN, J.

## DUNCAN, J.

This case involves four plaintiffs, each of whom retired from employment with the City of Medford (the city) and each of whom attempted to elect to continue the health insurance coverage that the city had provided to them as employees. But the city's health insurance plan that applied to plaintiffs at the time of their retirement did not provide coverage for retirees. Although plaintiffs each had the option to enroll in a retiree health insurance plan with the Public Employee Retirement System (PERS), they believed that the city was separately obligated under state law to provide them with health insurance, and they sued the city and its manager in the Jackson County Circuit Court.[1]

The legal impetus for this litigation is ORS 243.303(2). As applicable here, that statute currently provides:

> "The governing body of any local government that con-
> tracts for or otherwise makes available health care insur-
> ance coverage for officers and employees of the local gov-
> ernment *shall, insofar as and to the extent possible, make
> that coverage available for any retired employee* of the local
> government who elects within 60 days after the effective
> date of retirement to participate in that coverage and, at the
> option of the retired employee, for the spouse of the retired
> employee and any unmarried children under 18 years of
> age. The health care insurance coverage shall be made
> available for a retired employee until the retired employee
> becomes eligible for federal Medicare coverage, for the spouse
> of a retired employee until the spouse becomes eligible for
> federal Medicare coverage and for a child until the child
> arrives at majority, and may, but need not, be made avail-
> able thereafter. The governing body may prescribe reason-
> able terms and conditions of eligibility and coverage, not
> inconsistent with this section, for making the health care
> insurance coverage available. The local government may
> pay none of the cost of making that coverage available or
> may agree, by collective bargaining agreement or otherwise,
> to pay part or all of that cost."

---

[1] Plaintiffs first filed their claims in federal court along with federal claims. However, the federal district court declined to take jurisdiction over the state claims.

(Emphasis added.) There have been several amendments to the statute over the years. As originally enacted in 1981, ORS 243.303(2) provided that the local government "*may*, in so far as and to the extent possible," make the same health care insurance coverage available to retired officers, employees and their spouses. Or Laws 1981, ch 240, § 1 (emphasis added). In 1985, the legislature replaced "may" with "shall." Or Laws 1985, ch 224, § 1. As originally enacted, the statute included no requirement that an employee elect coverage within 60 days of retirement, and placed no limitation on that election based on eligibility for Medicare. In 1985, the legislature amended the statute to its current form, to require an election within 60 days of retirement and to include the provision that the local government "may, but need not" make coverage available after a retired employee or that employee's spouse becomes eligible for Medicare or a retired employee's child reaches the age of majority. *Id.*

The city provided health insurance coverage to its employees. In response to the legislature's 1985 amendment of ORS 243.303(2), the city adopted Resolution No. 5715, implementing the statute's provisions. Until 1990, the city offered all retirees the option of continuing their city health care insurance coverage after retirement. In 1990, however, the city began to scale back the availability of health insurance coverage after retirement, other than with respect to the 18 months allowed under the Consolidated Omnibus Budget Reconciliation Act of 1985, 29 USC §§ 1161-1168 (COBRA). Beginning in 1990, the city entered into an agreement with the Oregon Teamster Employer Trust (OTET) for the provision of health insurance for its police officer employees and, under that coverage, retiring police officers could no longer elect to continue their health insurance coverage after retirement. Beginning in 2001, the city added its management employees to the OTET plan, and the city's management employees could no longer elect to continue their health insurance coverage after retirement. In 2002, the city placed the nonmanagement employees in its Parks and Recreation Department and in its Public Works Department under the same program, and they were no longer eligible to elect to continue their health insurance coverage.

Approximately 135 city employees, those represented by AFSMCE, are still entitled to elect continued city health insurance coverage after retirement. All other retirees may choose to remain covered for 18 months after their retirement under COBRA. After that 18-month period, retired employees can seek health insurance coverage through private carriers or enroll in the Oregon Public Employees Retirement System Health Insurance Program, into which the city contributes so that its retired employees can obtain coverage.

Plaintiff Steinberg retired from his job as a city police officer effective January 1, 2003. Plaintiff Deuel retired from his job as the city engineer effective January 31, 2003. Plaintiff Doyle retired from his job as city attorney effective March 31, 2005, and plaintiff Miller retired from his job as a police officer effective May 31, 2006. Each plaintiff attempted to elect to continue health insurance coverage and, when the city rejected their attempts, plaintiffs brought this action against the city and its manager Michael Dyal.[2] Plaintiffs alleged in their complaint that the city's failure to allow them to enroll in health care insurance benefits as retirees (1) violated ORS 243.303(2); (2) violated the city's Resolution No. 5715 implementing the requirements of that statute; (3) constituted age discrimination under ORS 659A.030(1)(b); and (4) was a breach of plaintiffs' employment contracts. Plaintiffs sought injunctive relief and damages to compensate them for their additional medical and insurance expenses, as well as noneconomic damages and attorney fees.[3]

The trial court dismissed plaintiffs' second claim, which alleged a violation of the city's resolution, and plaintiffs did not appeal that ruling. The three remaining claims were resolved differently with respect to each plaintiff, some based on partial summary judgment, and the claims reach us on appeal in slightly different procedural postures.

---

[2] Dyal has been dismissed from the case.

[3] We note that the trial court withdrew an award of injunctive relief for Doyle and Miller, and that ruling is not challenged by plaintiffs by either cross-assignment of error or cross-appeal.

Plaintiff Doyle: On the first claim for relief, alleging violation of ORS 243.303(2), the trial court ruled that, in failing to provide Doyle with health insurance upon retirement comparable to the coverage provided to current employees, the city violated the statute. The trial court granted Doyle's motion for summary judgment on the question of liability on that claim, and allowed the question of damages to be tried to the jury. On the fourth claim for relief, a breach of contract claim, the trial court granted Doyle's motion for summary judgment on the question of liability only. The court explained that, although it rejected plaintiffs' contention that ORS 243.303(2) became a part of their employment contracts or provided a basis for a breach of contract claim, a handbook distributed to plaintiffs while they were employed and describing health insurance benefits provided by ODS Health Plans did constitute a part of the employment contract. The court concluded as a matter of law that the city breached that agreement when it declined to continue to offer health care insurance to plaintiffs after they retired. Doyle's breach of contract claim went to the jury on the question of damages. After trial to the jury, the jury awarded Doyle $61,142 in economic damages on the first and fourth claims, as well as $50,000 in noneconomic damages on the first claim. On the third claim for relief, age discrimination, after trial to the court, the court ruled in favor of Doyle and awarded damages to be "included within, and not in addition to, the award of damages" on the first and fourth claims. On appeal, the city asserts assignments of error relating to each claim.

Plaintiff Miller: On the claim under ORS 243.303(2), as with Doyle, the trial court granted Miller's motion for summary judgment on liability, and the issue of damages went to the jury. The jury awarded Miller damages of $29,866 on that claim. On the breach of contract claim, the trial court denied Miller's motion for summary judgment on liability and also granted the city's motion for directed verdict, and that claim never went to the jury. Nonetheless, on the form of judgment provided to the trial court by plaintiffs, the trial court erroneously entered judgment for Miller on the breach of contract claim, as well as an award of damages on that

claim. On the age discrimination claim, after trial to the court, the court ruled in Miller's favor and awarded Miller damages, again to be included within the damages award on the first and fourth claims. The city's appeal challenges rulings related to each claim.

Plaintiff Deuel: The trial court granted the city's motion for summary judgment on statute of limitations grounds on both of the statutory claims. On the breach of contract claim, the court granted Deuel's motion for summary judgment on liability, on the theory that the ODS Health Plans handbook had become a part of plaintiffs' employment contract, and that, as a matter of law, the city had breached that agreement. The breach of contract claim went to the jury on the question of damages, and the jury awarded Deuel $54,586 in economic damages . The city appeals the trial court's ruling on the breach of contract claim. Deuel has filed a cross-appeal challenging the trial court's order granting the city's motion for summary judgment on the basis of the statute of limitations as to the statutory claims.

Plaintiff Steinberg: The trial court granted the city's motion for summary judgment on the statutory claims, based on the statute of limitations. The court denied Steinberg's motion for summary judgment on the breach of contract claim, but allowed that claim to go the jury, and the jury found liability and awarded Steinberg economic damages of $37,208. The city appeals, asserting that the trial court erred in denying its motion for directed verdict on the breach of contract claim, and Steinberg has filed a cross-appeal, asserting that the trial court erred in dismissing the statutory claims.

We begin with plaintiffs' first claim, alleging violation of ORS 243.303(2), on which two of the plaintiffs (Doyle and Miller) prevailed on motions for partial summary judgment on the question of liability. In its first assignment of error, the city contends that the trial court erred in denying its motion for summary judgment on that claim; in its second assignment, the city asserts that the trial court erred in granting Doyle and Miller's motion for partial summary judgment on that claim.

Plaintiffs argue that the city's contention, raised in its first assignment, that ORS 243.303(2) does not provide for a private right of action, is not subject to review on appeal, because the court does not ordinarily review rulings denying motions for summary judgment. But that argument overlooks the fact that *both* parties raised this same issue by way of summary judgment motions, and that the trial court ruled on both motions. In an appeal from a judgment resulting from cross-motions for summary judgment, if both the granting of one motion and the denial of the other are assigned as error, then both are subject to review. *Eden Gate, Inc. v. D & L Excavating & Trucking, Inc.*, 178 Or App 610, 622, 37 P3d 233 (2002). Additionally, because the issue whether ORS 243.303(2) provides for a private right of action is strictly a legal one, the denial of the city's motion is independently reviewable. *Freeman v. Stuart*, 203 Or App 191, 194, 125 P3d 786 (2005). We review a trial court's rulings on summary judgment for legal error. *Stevens v. Bispham*, 316 Or 221, 223, 851 P2d 556 (1993). Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law. ORCP 47 C.

In addressing plaintiffs' claim under ORS 243.303(2) and concluding that the statute provides for a private right of action, the trial court found persuasive the legislature's 1985 amendment of the statute. The court explained:

"The evidence is undisputed that the statute was amended more than 20 years ago to change the language about how municipalities treat their retirees with respect to health insurance from a permissive 'may' to the directive 'shall' and that change was made despite widespread objection that it would 'force' local government action. A private right of action is necessary to effectuate the legislature's intent."

Thus, because of the legislature's amendment of the statute to make the obligations described in ORS 243.303(2) obligatory, the court concluded that a private right of action was necessary to effectuate the legislature's intent. But the fact that a municipality has an *obligation* under the statute does not necessarily resolve the question whether that obligation is enforceable through a private right of action for damages.

*See Bellikka v. Green*, 306 Or 630, 635, 762 P2d 997 (1988) (a "statutory tort" allows recovery of damages if the plaintiff can show that the damages suffered came about as a result of the violation of a statute which the legislature passed *intending to give recourse* to a group of plaintiffs). Because, as explained below, we conclude that ORS 243.303(2) does not demonstrate that the legislature contemplated a private right of action for damages, we conclude that the city was entitled to summary judgment on plaintiffs' first claim as to each plaintiff, and we therefore do not reach the city's other contentions relating to the claim alleging a violation of ORS 243.303(2).[4]

The Supreme Court most recently discussed this question in *Scovill v. City of Astoria*, 324 Or 159, 166, 921

---

[4] Plaintiffs devote a number of pages of their brief to assertions relating to preservation of error and compliance with the rules of appellate procedure, ORAP 5.45. The preservation issues appear to relate primarily to the fact that the city raised all of its arguments on summary judgment in an extensive motion for summary judgment before the parties had completed their discovery. On plaintiffs' motion, the trial court postponed ruling on the summary judgment motion until after discovery had been completed, at which time the city renewed its motion for summary judgment, through a document entitled "Second Motion for Summary Judgment," which it characterizes here as "the City's refiled Motion for Summary Judgment," by incorporating all of the arguments and points and authorities of the first motion. The trial court expressed frustration with the city's short-cut method and ultimately denied the motion for the reason that it failed to properly raise any issues. This is the source of plaintiffs' contention that the city did not raise, and the trial court did not rule on, many of the arguments made on appeal, including those raised in the first and second assignments. However, our review of the record shows that, prior to its ruling on the second motion for summary judgment, in a letter to the parties on August 14, 2008, the court advised the parties of the issues that it believed raised legal questions only and could be resolved on summary judgment, including the question whether ORS 243.303(2) provides a basis for a private right of action. The trial court rejected the city's contention on that issue in an "Opinion and Order on Defendants' Motion for Partial Summary Judgment," on November 20, 2008, before the filing of the Second Motion for Summary Judgment. ("The Court now renders its opinion on that portion of defendants' motions for summary judgment filed on April 8, 2008 and on August 4, 2008, outlined in the August 14th letter, in the order listed by the court in said letter.") Thus, the city raised, and the trial court addressed, the issue of whether ORS 243.303(2) provides a basis for a private action.

Plaintiffs' arguments relating to proper assignments of error complain primarily about the lack of technical compliance with ORAP 5.45 regarding the combining of arguments into single assignments and the lack of specificity in assigning error to rulings. Plaintiffs assert that the court should decline to consider the city's assignments of error that combine multiple questions and do not separately set out the challenged ruling. Whatever their technical shortcomings, we conclude that the assignments of error adequately identify the trial court rulings that the city challenges.

P2d 1312 (1996), and set out the analytical framework for determining when the failure to comply with a statutory duty gives rise to potential liability in tort. The first question to be addressed is whether a statute creates a duty. The court explained that that issue is determined by discerning the legislature's intent from the text and context of the statute. *Id.* at 166. If the court concludes that the statute creates a duty, the second question is whether the text and context show that the legislature contemplated that a failure to act according to that duty gives rise to a potential liability in tort. *Id.* The court in *Scovill* rejected the notion that a statutory tort can arise only if the legislature expresses its intent to create one; the intention can be inferred from the statute's text and context. *Id.* 168-70. Ultimately, the court said, when the statute does not explicitly create a private right of action, but the text and context of the statute show that the legislature contemplated potential liability, it is the court's responsibility to determine whether the duty imposed by the statute also gives rise to a private right of action for failure to carry out that duty, as well as the nature of that action. *Id.* at 170.

To the particulars of *Scovill*, in that case, the court had before it an interpretation of ORS 426.460(1), and whether that statute gives rise to a statutory tort for the failure to perform the prescribed duty that intoxicated persons "shall be taken" by police to an appropriate facility. *Scovill*, 324 Or at 163. A different statute, ORS 426.470, expressly protected a person from liability for actions *taken* under ORS 426.460(1) in good faith, with probable cause, and without malice, but provided no protection or limitation of liability for the *failure to act*. 324 Or at 168. Considering the two statutes together, the court drew the inference that, by excusing the good faith performance of the duties described in ORS 426.460(1), the legislature intended that a failure to act as mandated by ORS 426.460(1) could give rise to liability in tort. The court explained:

> "In summary, the text and context of ORS 426.460(1) and ORS 426.470 disclose a legislative intent to impose on the police a statutory duty to act on behalf of a publicly intoxicated person who is a danger to self *and further disclose that failure to act as mandated was contemplated by the*

*legislature to give rise to a potential liability in tort* in circumstances in which the limitations stated in ORS 426.470 do not apply."

*Scovill*, 324 Or at 169 (emphasis added).

Thus, the court concluded that the text and context of the statute showed that the legislature had contemplated potential liability for the failure to act under ORS 426.460(1). *Id.* But, because the statutes did not explicitly provide a remedy in tort, the court considered its role in determining what, if any, civil remedy may be predicated on the statute:

"Under what circumstances do the Oregon courts recognize that a tort claim may be predicated on a duty imposed by statute?

"One place to start a discussion of that question is with the provisions of *Restatement (Second) of Torts*, § 874A (1979), entitled 'Tort Liability for Violation of Legislative Provision,' which this court quoted with approval in *Bob Godfrey Pontiac v. Roloff*, 291 Or 318, 330, 630 P2d 840 (1981). That section provides:

"'When a legislative provision protects a class of persons by proscribing or requiring certain conduct but does not provide a civil remedy for the violation, the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision, accord to an injured member of the class a right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action.'

"As comment (c) to section 874A indicates, the question of whether a tort remedy is needed to enforce a statutory duty may be affected by the fact that a specific remedy, such as a civil penalty, is provided by a statute. The statute before us does not require giving any weight to that consideration, however, because there is no alternate remedy provided by the statute * * *.

"Therefore, recognition of a statutory tort is governed by the weight that a court finds reasonable to give to the protective purpose spelled out in the legislation. Under those circumstances, *Restatement* comment (d) suggests that

"'the question of what it should do still remains before the court. It must decide this question on its own because there is no automatic answer depending entirely upon a finding of an objective fact.

"'* * * * *

"'* * * [I]t is the court itself that is according the civil remedy to the injured party. The action is in furtherance of the purpose of the legislation and is stimulated by it * * *.'"

*Id.* at 170-72. The court concluded in *Scovill* that "[p]ermitting a tort action in the circumstances alleged in this case is consistent with and serves to enforce the legislated duty imposed by ORS 426.460(1), which does not specify other means for its enforcement." *Id.* at 172.

In applying the template described in *Scovill* to the question whether ORS 243.303(2) provides a private right of action for damages, the first question to be considered is whether ORS 243.303(2) gives rise to a duty. 324 Or at 166-69. That question has been substantially resolved by an opinion of the Oregon Supreme Court answering a question certified to it by the Ninth Circuit. As previously noted, plaintiffs initially brought their claims in federal district court and included a federal due process claim and a federal age discrimination claim under the Age Discrimination in Employment Act of 1967 (ADEA), 29 USC §§ 621-634. The federal district court granted summary judgment to the city on plaintiffs' federal due process claim and declined to exercise supplemental jurisdiction over the state law claims. Plaintiffs then brought this action in the Jackson County Circuit Court and, simultaneously, appealed the federal district court's judgment to the Ninth Circuit Court of Appeals. The Ninth Circuit determined that a resolution of plaintiffs' due process claim depended on an interpretation of state law—ORS 243.303(2)—that had not previously been construed and that was ambiguous. The court therefore certified to the Oregon Supreme Court the question "What amount of discretion does Oregon Revised Statutes section 243.303 confer on local governments to determine whether or not to provide health insurance coverage to their employees after retirement?" *Doyle v. City of Medford*, 565 F3d 536, 541-42 (9th Cir 2009) (*Doyle I*).

The Oregon Supreme Court accepted the certified question and answered it in *Doyle v. City of Medford*, 347 Or 564, 227 P3d 683 (2010) (*Doyle II*). The court said in *Doyle II* that, by using the word "shall" in ORS 243.303(2), the legislature intended to impose on local governments an obligation "to make the health insurance coverage that they provide to active employees available to retired employees." *Id.* at 692. However, the court explained, the nature of that obligation is modified by the phrase "insofar as and to the extent possible," and is intended to be flexible and not "unduly burdensome." *Id.* The court explained the nature of the duty imposed by the statute:

> "Based on the foregoing, we interpret ORS 243.303(2) to create an obligation on local governments to make the health insurance coverage that they provide to active employees available to retired employees. It does not, as the city argues, leave the city with 'total discretion' to decline to make coverage available to retirees or to choose health insurance coverage for its current employees without regard to whether the insurer is willing to offer coverage to retirees. Neither, however, do we interpret the statute as imposing an absolute mandate, subject only to an exception for actual impossibility. Local governments exist to provide government services, and they have statutory and contractual obligations to employees, retirees, and the citizens within their jurisdictions. Whether a local government has complied with ORS 243.303(2) will depend on whether it has made health insurance coverage available to retirees 'insofar as and to the extent possible,' in light of all the facts. The responsibility to demonstrate that it was not possible, under the statutory standard, to make coverage available to retirees rests with the local government, and we emphasize that the local government cannot make that showing, as the city attempts to here, by pointing solely to the fact that its chosen provider does not offer retiree health insurance coverage. Although the statutory standard is a legal one, determining whether a local government has demonstrated that it should be excused from making health insurance coverage available to retirees will depend on the facts of each case.

> "The certified question asks what 'amount of discretion' ORS 243.303(2) confers on local governments. As the discussion above demonstrates, we reject the city's position that

the statute delegates to the city discretion to make health insurance coverage available to retired employees; we likewise reject plaintiffs' position that the obligation is absolute, and can be excused only if making coverage available is not 'capable of happening.' The answer, instead, lies somewhere in between. We also find unhelpful the parties' efforts to reformulate the legal standard established by the statute. The statute requires a local government to make the coverage available 'insofar as and to the extent possible.' That is the standard that the local government must meet to be excused from the obligation imposed by ORS 243.303(2). Whether a local government has met that standard cannot be answered in the abstract and will depend on the facts."

*Id.* at 579-80.

Thus, in *Doyle II* the court concluded that ORS 243.303(2) creates an obligation on local governments to make health insurance coverage available to retirees. But the nature of that obligation is not precisely defined—it exists "insofar as and to the extent possible," and in light of all the facts.[5] *Id.* The court in *Doyle II* did not have before it or address the second question described in *Scovill*, whether the failure to carry out that statutory obligation could be tortious and subject to an action for damages.

As noted, the trial court in this case ruled that the failure to carry out the obligation described in ORS 243.303(2) is actionable, reasoning that "[a] private right of action is necessary to effectuate the legislature's intent." In arguing that the trial court erred, the city points to an absence of textual and contextual indications that the legislature contemplated a civil action in this context, in contrast with the many other employment-related contexts in which the legislature has expressly provided for a private right of action. The city further notes that, if the court were to recognize such a private right of action, the statute offers no guidance as to how such a claim would be prosecuted.

---

[5] After reviewing the Supreme Court's answer to the certified question, the Ninth Circuit Court of Appeals ultimately rejected plaintiffs' due process challenge, determining that the statute's qualifier, "insofar as and to the extent possible," accorded the local government extensive "functional discretion" and made the entitlement provided by ORS 243.303 too indefinite to constitute a "protected property interest." 606 F3d 667, 674-76 (9th Cir 2010) (*Doyle III*).

Plaintiffs offer several rationales in support of the trial court's ruling. They note, as did the trial court, that the legislative history shows that in 1985, the legislature changed from "may" to "shall" the requirement that municipalities provide health insurance to their retirees if they provide it to their employees, despite expressed concern that that change would remove municipalities' discretion to make health insurance available. *See Scovill*, 324 Or at 167 n 7 ("'Shall' in a statute ordinarily is mandatory."). They also assert that to effectuate the legislature's intent, the court must accord a right of action to the injured members of the class of employees protected by ORS 243.303(2). But primarily, plaintiffs contend that in *Doyle II* the Supreme Court described a local government's obligation under ORS 243.303(2) through terminology indicating that the court believed that the legislature intended the obligation to be enforceable through a private civil action for damages. Plaintiffs refer to the Supreme Court's discussion that

> "[t]he responsibility to demonstrate that it was not possible, under the statutory standard, to make coverage available to retirees rests with the local government, and we emphasize that the local government cannot make that showing, as the city attempts to here, by pointing solely to the fact that its chosen provider does not offer retiree health insurance coverage. Although the statutory standard is a legal one, determining whether a local government has demonstrated that it should be excused from making health insurance coverage available to retirees will depend on *the facts of each case*."

*Doyle II*, 347 Or at 579 (emphasis added). In plaintiffs' view, that discussion implicitly assumes a private right of action. Emphasizing the court's statement that it is the local government's responsibility to "make [the] showing" that it was not possible to make coverage available, and that "the facts of each case," will control the determination (implicitly by a court) whether the local government has demonstrated that it should be excused from the requirement, plaintiffs reason that the Supreme Court implicitly acknowledged that the statute contemplates private civil enforcement.

We agree that the Supreme Court described the obligation of ORS 243.303(2) with terminology that is apt in the

context of a civil proceeding. But that does not mean that the court concluded that the obligation could be enforced through a private action for damages or that it even considered whether the legislature had contemplated such an action. The court did not have that question before it and did not address it, and we do not believe that the court intended to signal any view at all on that issue. Instead, the court answered the question that had been put to it by the Ninth Circuit—the extent of a local government's discretion under ORS 243.303—and its answer was that municipalities have an obligation under ORS 243.303(2) that they are to carry out "insofar as and to the extent possible," but that the obligation is not intended to be "unduly burdensome." The court's discussion does not suggest an endorsement, or even a recognition, of a private right of action for damages.

In our analysis of the question, we conclude, based on both textual and contextual sources and the legislative history described in the Supreme Court's opinion, that no private right of action was contemplated. First, as noted, the statute itself makes no provision for a private right of action. We recognize that the court said in *Scovill* that an explicit statement of intention is not essential. 324 Or at 169. But, in a state where the legislature knows how to make explicit employment-related private rights of action, *see, e.g.*, ORS 659A.885 (describing procedures for employment-related statutory claims), the absence of an express statement supports an inference that a private right of action was not contemplated.

Further, there are no textual or contextual clues from which we can infer that the legislature contemplated the possibility of a private right of action or civil liability for the failure of a municipality to make available to its retirees the same insurance coverage that it provides to its employees. The creation of the obligation, in and of itself, is not enough to show an intention to provide injured persons with a right of action. *See Bellikka*, 306 Or at 635 (explaining that a "statutory tort" allows recovery of damages if the plaintiff can show that the damages suffered came about as a result of the violation of a statute which the legislature passed intending to give recourse to a group of plaintiffs); *Eduardo v. Clatsop Community Resource*, 168 Or App 383,

389, 4 P3d 83 (2000) (to provide a private right of action, statute creating obligation on city to protect persons in plaintiff's position from injury must show an intention to provide a right of action).

Part of what persuaded the Supreme Court in *Scovill* of a legislative intent to recognize the possibility of liability for the failure to carry out the duty prescribed by ORS 426.460 was the absolute nature of the obligation imposed on police to bring an intoxicated person to an appropriate facility. 324 Or at 173 ("If any condition stated therein is present, the person 'shall be taken' to a facility."). Part of what persuades us that the legislature did not contemplate a private right of action under ORS 243.303(2) is the indefinite nature of the obligation. As the Supreme Court noted in *Doyle II*, the text and context of ORS 243.303(2) give municipalities flexibility and discretion in determining how to comply with the obligation set forth in the statute. The local government's obligation under ORS 243.303(2) is to make the insurance available "insofar as and to the extent possible." The statute further provides expressly that "[t]he governing body may prescribe reasonable terms and conditions of eligibility and coverage," and "may pay none of the cost of making that coverage available or may agree, by collective bargaining agreement or otherwise, to pay part or all of that cost." In the absence of some indication that a private right of action was contemplated, we conclude that, in the context of this statute, the degree of flexibility and discretion accorded to the local government is inconsistent with an intention that the statute be enforceable through a private action for damages.

The legislative history discussed by the Supreme Court in *Doyle II*, 347 Or at 579, also emphasizes an intention to create flexibility in compliance with the obligation described in ORS 243.303(2) and supports our conclusion that the possibility of a private right of action for damages to enforce the statute's provisions was not contemplated when the legislature enacted ORS 243.303 in 1981, or when the statute was amended in 1985.[6]

---

[6] As noted, it is a question of legislative intent whether a statute creates a duty, the breach of which could be tortious. *Scovill*, 324 Or at 166. In light of our conclusion that the legislature did not contemplate that there could be liability in

In summary, the text, context, and legislative history of ORS 243.303(2) lead us to conclude that the legislature did not contemplate a private right of action for damages when a local government fails to carry out the obligation described in the statute. Accordingly, the trial court erred in denying the city's motion for summary judgment and in granting Doyle's and Miller's motion for summary judgment on the first claim. For the same reason, we affirm the trial court's granting of the city's motion for summary judgment on the first claim with respect to Steinberg and Deuel, and therefore do not reach their contention on cross-appeal that the trial court erred in granting the city's motion for summary judgment on the statute of limitations. Our conclusion resolves the city's first and second assignments of error.[7]

We next consider the city's assignments relating to plaintiffs' third claim for relief, age discrimination, under which plaintiffs asserted a violation of ORS 659A.030(1)(a). The ultimate factual inquiry in a statutory claim of age discrimination is whether the plaintiff has proved that the defendant intentionally discriminated against the plaintiff, that is, whether the defendant treated the plaintiff differently, and adversely, because of age. *Christianson v. State of Oregon*, 239 Or App 451, 455, 244 P3d 904 (2010), *rev den*, 350 Or 297; *see Durham v. City of Portland*, 181 Or App 409, 425-26, 45 P3d 998 (2002) (comparing proof under state and federal law). Plaintiffs alleged in their third claim that the city's actions violated ORS 659A.030,[8] because "[p]laintiffs' age was a substantial factor in [the city's] decision to

---

connection with the failure to carry out the obligation described in ORS 243.303, we do not address the second inquiry described in *Scovill*, whether the court should accord plaintiffs a civil remedy. 324 Or at 170-72.

  [7] Because we conclude that the legislature did not contemplate a private right of action for damages when a local government fails to carry out the obligation described in ORS 243.303(2), plaintiffs' claim does not allege a tort for the purposes of the OTCA. *See Scovill*, 324 Or at 170 n 9 (In order for an injury to be a "tort" for the purposes of the OTCA, the injury must be "one 'for which the law provides a civil right of action for damages or a protective remedy,' ORS 30.260(8)."). Therefore, we do not reach the parties' arguments about whether other OTCA requirements were satisfied.

  [8] ORS 659A.030(1)(b) provides that it is an unlawful employment practice

  "[f]or an employer, because of an individual's * * * age if the individual is 18 years of age or older * * * to discriminate against the individual in compensation or in terms, conditions or privileges of employment."

enter into an agreement for the provision of health insurance coverage which denied retirees [the] option to continue participation in [the city's] health care benefits program upon retirement." The trial court dismissed Deuel's and Steinberg's statutory age discrimination claims based on the statute of limitations, but it tried the claims of Doyle and Miller.

The trial court rejected plaintiffs' contention that, as alleged in the complaint, the city had engaged in discriminatory treatment, finding that "there is no evidence that age, rather than retirement status, was 'the reason' the City had a policy not to provide the same insurance to retirees and *** the age range of the employee pool and the particular parameters of the Oregon statute negate a finding that retirement status was an impermissible proxy for age." Plaintiffs do not challenge that ruling.

However, on the day of trial, and over the city's objection, the trial court ruled that it would allow evidence and consider plaintiffs' age discrimination claim on a theory of "disparate impact." A claim based on a theory of "disparate impact" does not require a showing of intentional discrimination. Rather, it asserts that an employment practice that is facially neutral is discriminatory in its effect.[9] In support of their theory that the city's health insurance practices had a discriminatory impact, plaintiffs put on evidence that a large percentage of the city's employees are over age 50 and that virtually all of those who retire are

---

[9] In *Groshong v. Mutual of Enumclaw Ins. Co.*, 143 Or App 450, 457-58, 923 P2d 1280 (1996), *aff'd*, 329 Or 303, 985 P2d 1284 (1999), we cited the United State's Supreme Court's description, in *Teamsters v. United States*, 431 US 324, 335-36 n 15, 97 S Ct 1843, 52 L Ed 2d 396 (1977), of the difference between "disparate treatment" and "disparate impact":

"'Disparate treatment' *** is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment. ***

"Claims of disparate treatment may be distinguished from claims that stress 'disparate impact.' The latter involves employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than on another and cannot be justified by business necessity. *** Proof of discriminatory motive, we have held, is not required under a disparate impact theory."

over age 50. Relying on that evidence, plaintiffs asserted that the city's policy has a disparate impact on persons over the age of 50.

The trial court concluded that plaintiffs had established their claim on a theory of disparate impact, but with a slightly different rationale. Referring to the criteria for "adverse impact discrimination" set out in a Bureau of Labor and Industries administrative rule, OAR 839-005-0010,[10] the trial court concluded that plaintiffs' evidence supported a claim based on "disparate impact." The court explained that, as set forth in the administrative rule, plaintiffs, as persons over the age of 18, were members of a "protected class." The court concluded, further, that plaintiffs were adversely affected by the city's policy, which disproportionately affects those over age 18. The trial court explained that, "[b]ecause the employees affected by the policy are all over the age of 18, it cannot be disputed that the policy affects employees over the age of 18 at a significantly higher rate than employees under the age of 18." For that reason, the court held that the city's policy not to provide the same insurance coverage to its retirees as to its current employees as applied "has a 'disparate impact' on older employees," (those over the age of 18) in violation of ORS 659A.030. Despite misgivings that "the intersection of ORS 659A.030 and OAR 849-005-0010" "produces a result, such as the one in this case, that makes little sense," the trial court concluded that application of the test set out in OAR 839-005-0010 "can only result in a

---

[10] OAR 839-005-0010(2) provides, in part:

"Adverse Impact Discrimination: Substantial evidence of adverse impact discrimination does not require establishment of intentional discrimination as provided in (1) of this rule. Adverse impact discrimination exists if the division's investigation reveals evidence that a reasonable person would accept as sufficient to support the following elements:

"(a) The respondent is a respondent as defined by ORS 659A.001(10) and OAR 839-005-0003(10) of these rules;

"(b) The respondent has a standard or policy that is applied equally.

"(c) The standard or policy has the effect of screening out or otherwise affecting members of a protected class at a significantly higher rate than others who are not members of that protected class; and

"(d) The complainant is a member of the protected class adversely affected by the respondent's standard or policy and has been harmed by the respondent's application of the standard or policy."

finding of illegal disparate impact discrimination[.]" Thus, after a trial to the court, the court ruled in favor of plaintiffs Doyle and Miller on their age discrimination claim.[11]

In its third through sixth assignments, the city asserts a number of errors in connection with the trial court's rulings on the age discrimination claim. In its fifth assignment, the city contends that the trial court erred in allowing plaintiffs to try their age discrimination claim, over the city's objection and to the city's prejudice, on a theory of disparate impact, because that theory is not cognizable in Oregon, it had not been pleaded, and it depended on different proof than the disparate treatment theory that plaintiffs had pled.

Plaintiffs reply that the city's argument is not properly raised on appeal. We conclude that the argument is raised.[12] On the merits, we agree with the city that establishing age discrimination based on disparate impact is a different theory than disparate treatment. Plaintiffs' complaint did not plead age discrimination based on a theory

---

[11] We note that, before oral argument in this case, the federal District Court for the District of Oregon rejected plaintiffs' age discrimination claims under the ADEA, determining under the same facts tried to the state trial court that (1) the state trial court's ruling was preclusive on the theory of "disparate treatment," and (2) that there was no age discrimination based on a theory of disparate impact, because plaintiffs Doyle and Miller had "failed to show *prima facie* disparate impact and, alternatively, that the City established a statutory affirmative defense because its decision to exclude retirees was reasonably based on financial factors." Subsequent to oral argument in this case, the Ninth Circuit Court of Appeals issued an opinion affirming the District Court's decision that the state trial court's determination of plaintiffs' disparate treatment was preclusive and further holding that plaintiffs' disparate impact claim fails because "the City's decision to exclude retirees falls with the statutory affirmative defense for 'otherwise prohibited' actions that are 'based on reasonable factors other than age'—also known as the RFOA defense. 29 USC § 623(f)(1); *see* 29 CFR § 1625.7(e)(1)." *Doyle v. City of Medford,* ___ F3d ___ (9th Cir, Mar 15, 2013) (*Doyle IV*).

[12] The city's brief asserts that the trial court erred in allowing plaintiffs to try their case on a theory of disparate impact, over the city's objection, but the city does not "set out pertinent quotations of the record, * * * together with pages of the transcript," identifying where the issue was preserved and ruled on by the trial court, as required by ORAP 5.45(4)(a)(ii). However, the city's brief cites to— and includes in its excerpt of record—the trial court's opinion, which describes the city's objection and the court's ruling. We do not mean to suggest that that is an alternative way of complying with the requirement of ORAP 5.45(4)(a)(ii), but in view of the fact that the trial court's opinion describes and rules on the precise legal error asserted as well as the trial court's ruling, we exercise our discretion to consider it.

of disparate impact, and the proof to establish a claim based on a theory of disparate impact, if cognizable under ORS 659.030,[13] would be quite different from that required to establish a claim based on disparate treatment. *See Christianson*, 239 Or App at 457-58 ("Although a disparate impact case may be made out by a showing that a facially neutral policy or criterion has a disproportionally negative impact on a protected class, *see City of Portland v. Bureau of Labor and Ind.*, 298 Or 104, 122-23, 690 P2d 475 (1984) (describing class of cases); *** a disparate treatment case requires a showing of intentional discrimination"); *Rose v. Wells Fargo & Co.*, 902 F2d 1417, 1424 (9th Cir 1990) (to establish discrimination based on disparate impact, "the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused exclusion of applicants for jobs or promotions because of their membership in a protected group"). ORCP 16 B requires that

> "[e]ach separate claim or defense shall be separately stated. *Within each claim alternative theories of recovery shall be identified as separate counts.*"

(Emphasis added.) A party is entitled to rely on the theory pleaded to frame the issues to be tried. *Navas v. City of Springfield*, 122 Or App 196, 201, 857 P2d 867 (1993) (in absence of agreement of parties under ORCP 23 B to try case on issues not raised in pleadings, trial court abused its discretion in allowing amendment of complaint on day of trial to include new theory of recovery); *see also Central Oregon Fabricators, Inc. v. Hudspeth*, 159 Or App 391, 403, 977 P2d 416, *rev den*, 329 Or 10 (1999) (trial court erred in granting plaintiff relief on unpleaded theory of adverse possession where plaintiffs never sought leave of the trial court to amend their pleadings to conform to any proof of adverse possession). Generally, in civil practice, the parties are limited to the issues that are pleaded, and a trial court

---

[13] The United States Supreme Court first recognized a disparate impact theory of discrimination in *Griggs v. Duke Power Co.*, 401 US 424, 431, 91 S Ct 849, 28 L Ed 2d 158 (1971), where the court said that the anti-discrimination statute at issue "proscribes not only overt discrimination but also practices that are fair in form, but discriminatory in operation." We note that ORS 659.850(1) defines discrimination in education to include acts that are "fair in form, but discriminatory in operation." ORS 659A.030 does not include that language.

has no authority to render a decision or award damages on an unpleaded theory. *See Northwest Marketing Corp. v. Fore-Ward Investments*, 173 Or App 508, 512-13, 22 P3d 1230 (2001) (where parties did not agree to try unpleaded theory, trial court erred in awarding damages on unpleaded theory). An exception is described in ORCP 23 B, which allows issues not pleaded to be tried by express or implied consent of the parties. Plaintiffs made no request to amend their pleading to allege a disparate impact theory, and it is apparent that the city did not consent to try the case based on a theory of disparate impact. We accordingly conclude that the trial court erred in awarding damages to plaintiffs on their age discrimination claim on a theory of disparate impact. Our conclusion renders moot Steinberg's and Deuel's contention on cross-appeal that the trial court erred in granting the city's motion for summary judgment on the age discrimination claim based on the statute of limitations.

As mentioned above, the city also contends that the trial court erred in denying its motion for a directed verdict on the age discrimination claim under ORS 659A.030(1), because (1) Oregon does not recognize discrimination based on a theory of disparate impact,[14] and (2) because plaintiffs' evidence of disparate impact was legally insufficient. In light of our conclusion that the trial court erred in considering the claim under a theory of disparate impact, we need not resolve those questions.

The city's seventh through tenth assignments relate to plaintiffs' fourth claim for relief, breach of contract, alleging that "the terms of ORS 243.303 * * * became a part of each Plaintiff's employment contract with the City," and that the city breached "each Plaintiff's employment contract by failing to provide each Plaintiff with the option

---

[14] On that issue, *compare PSU Association of University Professors v. PSU*, 352 Or 697, 291 P3d 658 (2012) ("ORS 659A.030(1)(a) to (e) prohibit an employer * * * from subjecting an employee to disparate, adverse treatment on account of an employee's race, color, religion, sex, sexual orientation, national origin, marital status, age, or expunged juvenile records.") with *Christianson*, 239 Or App at 457, and *Sch. Dist. No. 1 v. Mission Ins. Co.*, 58 Or App 692, 650 P2d 929 (1982), *rev den*, 294 Or 682 (1983) (in case involving insurer's duty to defend discrimination claim, resolving any doubts regarding coverage in favor of the insured, court stated that former version of Oregon's discrimination statute as "susceptible to an interpretation" that a "disparate impact" claim is cognizable under the statute).

to continue participation in [the city's] health insurance program upon each Plaintiff's retirement." As earlier noted, the trial court denied the city's second (or "refiled") motion for summary judgment on the breach of contract claim with respect to each plaintiff. The trial court then granted Deuel's and Doyle's motion for partial summary judgment on the breach of contract claim with respect to liability, but denied Steinberg's and Miller's motions for partial summary judgment.[15] In granting Doyle's and Deuel's motions, the trial court rejected plaintiffs' contention that ORS 243.303(2) formed the basis for a contract between the city and any of the plaintiffs, and plaintiffs do not challenge that conclusion on appeal. The trial court ruled, however, that a handbook provided to city employees in 1999 by ODS Health Plan,[16] describing employee health insurance benefits available for the plan year beginning September 1, 1999, and specifically providing that retirees could elect to continue coverage, could give rise to such a contract, and that, as to Doyle and Deuel, that handbook did give rise to such an agreement, which the city breached as a matter of law. The claims of Doyle and Deuel were tried to the jury on the question of damages. With respect to Steinberg and Miller, the trial court declined to find a breach of the employment agreement as a matter of law and therefore rejected their motions for partial summary judgment on liability. However, the court allowed Steinberg's breach of contract claim to go to the jury in its entirety. The court also allowed Miller's claim to be tried, but then granted the city's motion for directed verdict.

The city assigns error to the trial court's denial of its motion for summary judgment on the breach of contract claim, as well as to the trial court's granting of Deuel's

_____

[15] The trial court determined that, because Steinberg's and Miller's health insurance benefits had been negotiated by their union, they had not relied on the ODS Health Plan handbook to continue their employments.

[16] The ODS Health Plans member handbook for 1999 provided:

"Retirees, including their *enrolled* dependents, are *eligible* to continue coverage under the Plan after retirement as long as they apply for coverage within 60 days of retirement."

It is undisputed that medical plans were for one year only and were renewed annually, and that the city stopped providing health insurance coverage through ODS Health Plans beginning January 1, 2002.

and Doyle's motion for partial summary judgment on the question of liability. Plaintiffs argue that the city has not properly preserved its arguments with respect to the denial of its motion for summary judgment on the breach of contract claim.

Because of the trial court's decision to postpone ruling on the city's original motion for summary judgment, plaintiffs are correct that the court never addressed the merits of the city's contention, made in its original motion for summary judgment, that plaintiffs had not stated a claim for breach of contract. And the trial court also never addressed the merits of that contention in its order denying the city's second motion for summary judgment, because the trial court rejected that motion on procedural grounds. However, plaintiffs' motion for partial summary judgment raised the same legal issue, and in its eighth assignment of error, the city asserts that, in ruling on that motion, the trial court reached the erroneous legal conclusion that an employment agreement could be based on the ODS Health Plans member handbook. We therefore consider the city's argument that the court erred in granting partial summary judgment to plaintiffs and in allowing the breach of contract claim to go to the jury.

On the merits, plaintiffs defend the trial court's ruling by asserting simply (1) that the city does not challenge the court's conclusion that an employee handbook may be enforced as a contract when it is made known to the employees and when the employees continue their employment after receiving the handbook, *see, e.g.*, *Yartzoff v. Democrat-Herald Publishing Co.*, 281 Or 651, 576 P2d 356 (1978), and (2) that the evidence is undisputed that plaintiffs were aware of the handbook and its promise to make health care benefits available to retirees and relied on that promise in continuing their employment. True as that is, the city *does* challenge the trial court's conclusion that the particular ODS Health Plans handbook, which was not a general handbook of employment, but only described health insurance benefits, could form the basis for an employment contract under any circumstance.

Further, plaintiffs attempt to characterize the issues in this assignment as presenting only the question whether there were disputed issues of fact—*i.e.*, whether plaintiffs were aware of the retirement benefits described in the ODS Health Plans handbook and whether they relied on them in continuing their employment. They contend correctly that a party opposing a motion for summary judgment must do more than simply deny the allegations of the pleadings, but must come forward with specific facts showing a triable issue.

However, the issue raised in the eighth assignment of error is strictly legal: Did the trial court err in concluding that the ODS Health Plans member handbook could form the basis for a contractual agreement between the city and its employees that required the city to offer the same health insurance coverage to retirees? For two reasons, we conclude that the court erred. First, once again, the trial court granted summary judgment and allowed plaintiffs to try their claim on a theory different from the one pleaded. In their complaint, plaintiffs had alleged that ORS 243.303(2) became a part of the employment contract between the city and plaintiffs. The trial court rejected that theory, but agreed with plaintiffs' assertion, made in their motion for partial summary judgment, that the ODS Health Plans member handbook could form the basis for a breach of contract claim and that, based on the undisputed evidence and as a matter of law, the promise for continued coverage contained in that handbook became a part of the employment contracts of Doyle and Deuel. The court explained its ruling:

> "[Plaintiffs] have presented undisputed evidence in their affidavits that they were aware of both the handbooks and generally aware of the City's provision of the election during their employment and that they relied on such promise in continuing their employment. There is also undisputed evidence that the City failed to provide them with the election when they retired, thus breaching the contract. On this basis, Doyle and Deuel are entitled to summary judgment on their contract claim and they will be entitled to pursue their damages claim at trial."

In accepting plaintiffs' contention in their summary judgment motion that the ODS Health Plans member handbook

formed the basis for a breach of contract claim, the trial court essentially allowed plaintiffs to prosecute their breach of contract claim on a contractual basis different from the one pleaded, and that was error.

Second, and apart from the question whether the trial court should have allowed plaintiffs to assert a different contractual basis for their claim, we conclude that the trial court was incorrect in its conclusion that the ODS Health Plans member's handbook became a part of an employment agreement between the city and its employees. In the first place, although the handbook described health insurance benefits for one plan year beginning September 1, 1999, there is no indication that the handbook was intended to become a part of an employment contract. Second, it is clear from the text of the document itself that it was not intended to provide a right to insurance coverage that would become a permanent part of an employee's employment contract and that could be enforced after the plan year had expired. The agreement states:

> "The Employee Plan Description describes your Insurance on the effective date of the Plan. The document may be changed or replaced at any time, by the Group or ODS Health Plan, without the consent of any employee."

We conclude that the ODS document describing employees' health insurance benefits for one plan year beginning September 1, 1999, could not constitute the basis for a contractual employment agreement in subsequent years and that the trial court erred in so concluding. For that reason, we conclude that the trial court erred in granting Doyle's and Deuel's motion for partial summary judgment on the breach of contract claim. For the same reason, we agree with the city's contention, made in its ninth assignment of error, that the trial court erred in denying the city's motion for directed verdict on Steinberg's claim and in allowing that claim to go to the jury on the same theory.

Finally, the city contends that the trial court erred in mistakenly entering judgment for Miller (including an award of damages) on the breach of contract claim, despite the fact that the court had granted the city's motion for a directed verdict on that claim. Plaintiffs respond that the

court should not review this assignment, because, by not pointing out the error when it received the proposed form of judgment and by not raising the issue at a hearing to consider the city's objections to the judgment, the city acquiesced in the erroneous judgment. It is odd that neither the parties nor the trial court noticed that the judgment erroneously gave judgment to Miller on the breach of contract claim, despite the fact that the trial court had granted the city's motion for directed verdict on that claim and the jury had not even considered it. Because the error is plain, as is the prejudice to the city, and we exercise our discretion to correct it. We therefore reverse the judgment for Miller on the breach of contract claim that was not even considered by the jury after the trial court granted the city's motion for directed verdict on that claim.

In summary, we conclude that the trial court erred in granting plaintiffs' motion for summary judgment and denying the city's motion for summary judgment on the question of liability on plaintiffs' claim that the city violated ORS 243.303(2), because that statute does not provide a private right of action for damages. We conclude that the trial court erred in allowing plaintiffs' age discrimination claim under ORS 659A.030 to proceed to trial on a theory of disparate impact, which was not pleaded. We conclude that the trial court erred in allowing plaintiffs' breach of contract claim to proceed to trial based on the provisions of the ODS Health Plans member handbook, which was not pleaded. Finally, we conclude that the trial court erred in entering judgment for Miller on the breach of contract claim, which was not tried. In light of our conclusions, the cross-appeal is moot.

Reversed on appeal; cross-appeal dismissed as moot.